# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>    Plaintiff,<br><br>  v.<br><br>CHASE, INC., d/b/a SLATER SHELL,<br><br>    Defendant.<br>_____/ | Case No. 1:14-cv-01178-SKO<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR PROTECTIVE ORDER REQUIRING DEFENDANT TO DELIVER PLAINTIFF'S PRIVATE MEDICAL RECORDS OBTAINED AGAINST PLAINTIFF'S OBJECTION**<br><br>(Doc. 42) |

## I.   INTRODUCTION

On July 6, 2015, Plaintiff Ronald Moore ("Plaintiff") filed an "ex parte application for protective order requiring Defendant to deliver Plaintiff's private medical records obtained against Plaintiff's objection" along with a declaration by Plaintiff's counsel Tanya Moore ("Moore"). (Doc. 42.)  On July 8, 2015, Defendant Chase, Inc., d/b/a Slater Shell ("Defendant") filed its opposition, along with declarations by Defendant's counsel Ty Kharazi ("Kharazi"), legal assistant Martha Nunez-Gonzalez ("Nunez-Gonzalez"), and supervising paralegal Ricardo Cristobal ("Cristobal").  (Docs. 44; 45; 46.)

//

## II.     BACKGROUND

**A.     Factual Background[1]**

On May 13, 2015, defense legal assistant Nunez-Gonzalez placed an email order with Melissa Norwood of First Legal Records Retrieval ("First Legal"), a third-party legal records production service, for service of a subpoena on Kaiser Permanente ("Kaiser").  (Doc. 45, ¶ 1.) Attached to the email was a draft subpoena issued by the U.S. District Court for the Eastern District of California, requesting

> All Medical Records, in any format whether stored in electronic format or paper, inclduing (*sic*) emergency room, inpatient and outpatient records, files, SOAP notes, prescription records, radiological reports, photographs, physical theraphy (*sic*) and medical files pertaining to RONALD D. MOORE, DOB [omitted] for periods of 1/1/2005 to the present.

(Doc. 45-1, Exh. 1 ("Original Subpoena").)  The Original Subpoena was signed by defense counsel Kharazi and dated May 12, 2015.  In the email to First Legal, Nunez-Gonzalez requested that First Legal "serve the subpoena with all appropriate notices" and specifically requested First Legal "notice opposing counsel of subpoena."  (Doc. 45-1, Exh. 1.)  First Legal acknowledged receipt of the request by email on May 13, 2015.  (Doc. 45-1, Exh. 1.)

As a third-party legal records production and copy service, First Legal redrafted the Original Subpoena attached to the May 13, 2015, email.  Unbeknownst to defense counsel, First Legal had redrafted the Original Subpoena incorrectly, and issued a subpoena from the U.S. District Court for the Northern District of California requesting a significantly broadened category of records from Kaiser:

> All documents and records pertaining to the care, treatment and examination of Ronald D. Moore, including but not limited to, any itemized statement of the billing charges, sign-in sheets, inpatient and outpatient charts and records, emergency room and lab reports, prescription and pharmacy records, CAT scans, x-rays, MRI's, EKG and EMG reports, and any other records pertaining to Ronald D. Moore, from the first date of treatment to and including the present. DOB: [omitted], SS#: unknown. Billing records are including but not limited to any records/documents that may be stored digitally and/or electronically: charges, explanation of benefits, payments, adjustments, write-offs, balances due,

---

[1]  In preparing the factual background, the Court relied on the parties' exhibits to resolve any conflicting information or statements between the various declarations.

2

> insurance records and itemized billing charges regarding any and all care, treatment and/or examinations pertaining to Ronald D. Moore.

(Doc. 42-2, Exh. A ("Revised Subpoena").)  The Revised Subpoena was therefore not only defective on its face, as it had been issued from the incorrect district court; it was also substantially broader than what Defendant had initially requested.

On May 27, 2015, plaintiff's counsel Moore received a copy of the Revised Subpoena and contacted defense counsel Kharazi by email to demand he immediately withdraw the Revised Subpoena. (Doc. 42-2, Exh. B.) Moore provided three reasons for the demand: (1) the Revised Subpoena was issued from an incorrect district court and was therefore defective on its face pursuant to Fed. R. Civ. P. 45(2); (2) Moore never received service of the Notice of Issuance of Subpoena; and (3) Plaintiff's medical records are protected by the "California Constitution, HIPPA, and the CMIA" and such a broad request "invades his right to privacy." (Doc. 42-2, Exh. B.) Moore also stated that if Kharazi did not respond by June 1, 2015, she would "bring a motion to quash and for sanctions." (Doc. 42-2, Exh. B.)

In response to Moore's email, Nunez-Gonzalez promptly contacted First Legal and requested that First Legal "re-serve" the Original Subpoena from the correct district. (Doc. 45-4, Exh. 4.) Nunez-Gonzalez again attached the Original Subpoena as issued from the Eastern District and with the limited medical record production request. (Doc. 45-4, Exh. 4.) First Legal responded to the email and confirmed that the Original Subpoena would be served again. (Doc. 45-5, Exh. 5.)

On June 1, 2015, Moore emailed Kharazi asking for the status of the Revised Subpoena. (Doc. 42-2, Exh. C.)  Moore informed Kharazi that she would have "to start preparation of [Plaintiff's] motion to quash today but [was] still hopeful that [they] [could] resolve this issue without it." (Doc. 42-2, Exh. C.)  Kharazi emailed Moore and responded that his office had sent her a new subpoena, and once received she could review it and contact him, if necessary. (Doc. 42-2, Exh. C.)  Kharazi also informed Moore he would be in trial that week. (Doc. 42-2, Exh. C.) Moore responded that "if any records whatsoever are produced to you under the previous subpoena, we will move the Court for sanctions as well as custody of the records and any copies

made." (Doc. 42-2, Exh. D.)

That same day, a reminder notice was sent from First Legal to Moore's offices, notifying Moore that a subpoena had been issued to Kaiser and offering Moore "an opportunity to obtain the same set of records that [First Legal] [would] deliver to subpoenaing counsel." (Doc. 44-1, Exh. 1.) The reminder notice included an instruction to "place an 'x'" beside any item that Moore's office wished to obtain a copy and to indicate the method of payment for those copies. (Doc. 44-1, Exh. 1.) Marejka Sacks ("Sacks"), a paralegal with the Moore Law Firm, checked an "x" beside the category "Kaiser Permanente" and beside "COD" (charge on delivery) as payment for those copies, and signed her name on the line authorizing a copy to be made and charged on delivery. (Doc. 44-1.) In addition to requesting a copy of the subpoenaed records, Sacks wrote "we have objected to the subpoena on behalf our client Ronald Moore" in a blank space on the request. (Doc. 44-1, Exh. 1.) Isaac Medrano, another employee with the Moore Law Firm, faxed the signed notice to First Records Retrieval (First Legal) on June 5, 2015. (Doc. 44-1, Exh. 1.)

On June 15 and 16, 2015, unaware the Moore had requested a copy of the Kaiser records on June 5, 2015, Nunez-Gonzalez contacted First Legal via email requesting a copy of the corrected Notice of Issuance of Subpoena "such as the one [she had] attached in prior email[s]." (Doc. 45-6, Exh. 6.) On June 16, 2015, First Legal responded that the "corrected subpoena" had only been served on Kaiser; it had not been re-noticed to opposing counsel. (Doc. 45-7, Exh. 7.) It is not clear whether this "corrected subpoena" was the Original Subpoena sent by Kharazi's office or the Revised Subpoena from First Legal. On June 17, 2015, Nunez-Gonzalez requested the "entire order" for Plaintiff's Kaiser records be put "on hold." (Doc. 45-8, Exh. 8.)

On June 25, 2015, copies of the requested Kaiser records were delivered by FedEx to defense counsel. (Doc. 44, ¶ 6; 46, ¶ 2.) Apparently, no one at Kharazi's office noticed or opened the delivery when it was made, and on June 26, 2015, Nunez-Gonzalez emailed First Legal to request that the hold be removed from the order, "[t]he attached subpoena be re-served on Kaiser Permanente . . . . with all appropriate notices," and opposing counsel be served with the new subpoena. (Doc. 45-9, Exh. 9.) The Original Subpoena was attached to the email for re-service, still bearing Kharazi's signature and dated May 12, 2015. (Doc. 45-9, Exh. 9.)

4

That same day, Moore received a copy of Plaintiff's Kaiser medical records pursuant to her June 5, 2015, faxed request to First Legal. (Doc. 42-2.) Moore emailed Kharazi objecting that no second subpoena had been served on her office and demanded he "immediately have all records delivered" to her office, make no copies of the records, and allow no one to view the records. (Doc. 42-2.) Moore also demanded Kharazi provide an affidavit attesting that these things had been done, or she would motion the Court "ex parte . . . for a protective order and for sanctions for [his] gross misrepresentations and failure to withdraw the subpoena as promised." (Doc. 42-2.) Kharazi and Moore thereafter exchanged several emails until defense paralegal Cristobal located the FedEx box containing Plaintiff's Kaiser records, sealed and unopened, on June 30, 2015. (Docs. 42-2, Exhs. F, G, H; 46, ¶ 3.) Cristobal emailed Moore to inform her that the records had been located and remained sealed and unopened, and would be moved to Kharazi's office unopened. (Doc. 46-1, Exh. 1.) Moore emailed Kharazi and informed him that if he did not deliver Plaintiff's Kaiser records to her immediately, she would move ex parte for a protective order. (Doc. 42-2, Exh. I.)

On July 2, 2015, Kharazi emailed Moore and "declare[d] under penalty of perjury" that the box of Plaintiff's Kaiser medical records remained sequestered in his office, sealed and unopened, pending resolution of their dispute. (Doc. 42-2, Exh. J.) Kharazi proposed a compromise whereby he would continue to sequester the records, sealed and unopened, while Plaintiff reviewed her copy of the records and created a privilege log of which specific documents within the records she contended were privileged. (Doc. 42-2, Exh. J.) If he agreed with her privilege log, he would "ask First Legal to retrieve the sealed box and remove those pages from the box." (Doc. 42-2, Exh. J.) If he disagreed with her privilege log, he "would ask Judge Oberto to review the documents in camera and [inform the defense] whether [it is] entitled to th[os]e documents." (Doc. 42-2, Exh. J.) Moore rejected this compromise by email that same morning, stating that Kharazi's conduct was "deplorable" and "sanctionable," and informing him that she would proceed by motion to secure the delivery of his copy of Plaintiff's Kaiser medical records to her office. (Doc. 42-2, Exh. K.)

//

**B.     Procedural Background**

On July 6, 2015, Plaintiff filed an "ex parte application for protective order requiring Defendant to deliver Plaintiff's private medical records obtained against Plaintiff's objection." (Doc. 42.)  At no time prior to filing this "application" did Plaintiff file a motion to quash the subpoena, file a motion or stipulation for a protective order, request an informal discovery dispute conference pursuant to Magistrate Judge Oberto's informal discovery dispute resolution practice, or file any other motion pursuant to Local Rule 251.  (*See generally,* Docket.)

### III.     LEGAL STANDARDS

**A.     Standard for Ex Parte Applications**

The "opportunities for legitimate ex parte applications are extremely limited."  *In re Intermagnetics America, Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989); *see also Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 489 (C.D. Cal. 1995) (to be proper, an ex parte application must demonstrate good cause to allow the moving party to "go to the head of the line in front of all other litigants and receive special treatment").

The use of such a procedure is justified only when (1) there is a threat of immediate or irreparable injury; (2) there is danger that notice to the other party may result in the destruction of evidence or the party's flight; or (3) the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion (*i.e.*, to file an overlong brief or shorten the time within which a motion may be brought).  *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013) (citing *Mission Power*, 883 F. Supp. at 490[2]).  When unwarranted, however, ex parte applications disregard procedural "[s]afeguards that have evolved over many decades [and have been] built into the Federal Rules of Civil Procedure and the Local Rules of this

---

[2]   "Ex parte motions" are communications a party makes to the court without any notice to the other side, and are justified

> . . . where notice to the adversary might nullify the ability ever to achieve the end sought.  This could occur, for example, where there is a temporal urgency such that immediate and irreparable harm will occur if there is any delay in obtaining relief.  ("The tomatoes will spoil if we don't move them immediately.")  It could also occur where it is likely that, if given notice, someone would act improperly to frustrate the party's ability ever to obtain the relief sought.  ("If we alert them, they will move the yacht before we can seize it.")

*Mission Power*, 883 F. Supp. at 490.

court. The rules contemplate that regular noticed motions are most likely to produce a just result. This is because they give the adversary an opportunity to prepare a thorough opposition (and, if needed, an opportunity for oral argument) according to a predesigned, consistent timetable." *Id.* at 491. As noted by our sister district, the Central District of California:

> Timetables for the submission of responding papers and for the setting of hearings are intended to provide a framework for the fair, orderly, and efficient resolution of disputes. Ex parte applications throw the system out of whack. They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason.

*In re Intermagnetics America, Inc.*, 101 B.R. at 193.

Finally, "[e]x parte applications are not intended to save the day for parties who have failed to present requests when they should have . . . ." *Id.* at 193. "Ex parte applications are a form of emergency relief that will only be granted upon an adequate showing of good cause or irreparable injury to the party seeking relief." *Clark v. Time Warner Cable*, No. CV-07-1797-VBF(RCx), 2007 WL 1334965 (C.D. Cal. May 3, 2007) (citing *Mission Power Eng'g Co.*, 883 F. Supp. at 492). The moving party must be "without fault" in creating the need for ex parte relief or establish that the "crisis [necessitating the ex parte application] occurred as a result of excusable neglect." *Id.* An ex parte application seeks to bypass the regular noticed motion procedure; consequently, the party requesting ex parte relief must establish a basis for giving the application preference. *See id.*

**B.     Standard for Subpoenas Duces Tecum Under Rule 45**

Federal Rule of Civil Procedure 45 governs subpoenas duces tecum for the production of documents with or without the taking of a deposition. One of the purposes of Rule 45 is "to facilitate access outside the deposition procedure provided by Rule 30 to documents and other information in the possession of persons who are not parties . . . ." Advisory Committee Notes to 1991 Amendment of Rule 45. "The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34." *Id.* Under Rule 34, a request for production of documents applies to "matters within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a).

Under Rule 45, the nonparty served with the subpoena duces tecum must make any objections within 14 days after service or before the time for compliance, if the nonparty is served less than 14 days before time for compliance. Fed. R. Civ. P. 45(c)(2)(B). Failure to serve timely objections waives all grounds for objection, including privilege. *U.S. ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002). On timely motion, the Court may quash or modify the subpoena. Fed. R. Civ. P. 45(c)(3)(A). A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or file a motion to quash. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, at 636 (C.D. Cal. 2005); *see also Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 n.5 (9th Cir. 1983) ("Once the person subpoenaed objects to the subpoena . . . the provisions of Rule 45[c] come into play.").

## IV. DISCUSSION

### A. The "Ex Parte Application" Is Procedurally Defective and Must Be Denied

Before the Court is Plaintiff's "ex parte application for protective order requiring Defendant to deliver Plaintiff's private medical records obtained against Plaintiff's objection." (*See* Doc. 42.) The Court notes, as an initial matter, that this "application" is in effect a hybrid between, and filed in lieu of, a motion to quash the subpoena, a motion to compel, and a motion for a protective order. The hybrid motion is subject to the regular notice requirements of the Federal Rules of Civil Procedure and Local Rule 251. As a hearing on Plaintiff's "Ex Parte Application" was not properly noticed, the filing is procedurally defective and must be denied on its face.

### B. The "Ex Parte Application" Fails to Demonstrate Ex Parte Relief Is Warranted

Even if Plaintiff had filed a proper ex parte motion, Plaintiff has not demonstrated he is entitled to ex parte relief. Ex parte relief is provided when (1) there is a threat of immediate or irreparable injury; (2) there is danger that notice to the other party may result in the destruction of evidence or the party's flight; or (3) the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion (*i.e.*, to file an overlong brief or shorten the time within which a motion may be brought). *Horne*, 969 F. Supp. 2d at 1205.

//

Here, defense counsel has represented "under penalty of perjury" that Plaintiff's medical records remain sequestered, sealed, and unopened. (*See* Doc. 44.) There is no threat of immediate or irreparable injury in the form of accidental or malicious disclosure so long as those records remain sequestered. There is no danger that the records will be destroyed and thereby unavailable to Plaintiff, as his counsel ordered her own copy of the records on June 5, 2015, and received that copy on June 26, 2015. (*See* Docs. 42-1, ¶ 12; 44-1, Exh. 1.) And significantly, this is not the type of requested relief that could not have been brought in a regularly noticed motion.

At any time prior to production of the subpoenaed records, Plaintiff could have filed a motion to quash the subpoena. Moreover, once the records were in Plaintiff's possession, Plaintiff could have filed: (1) a regularly noticed motion pursuant to the requirements of Local Rule 251, requesting an informal discovery dispute conference pursuant to the undersigned's informal discovery dispute resolution practice, or (2) a stipulation or motion for protective order to ensure that the content of Plaintiff's medical records remains protected.

**C.    The "Ex Parte Application" Fails to Demonstrate Good Cause that the Requested Relief Should Be Granted**

As discussed above, ex parte applications are a form of emergency relief. They are not eleventh hour motions "intended to save the day for parties who have failed to present requests when they should have . . . ." *In re Intermagnetics America, Inc.*, 101 B.R. at 193. A moving party requesting ex parte relief must be either "without fault" in creating the need for such relief or bears the burden to establish that the crisis necessitating the ex parte application occurred as a result of excusable neglect. *See Mission Power Eng'g Co.*, 883 F. Supp. at 492.

It is undisputed that Plaintiff's counsel failed to file a motion to quash the Revised Subpoena which was issued from the Northern District and requested a broad range of records from Kaiser despite Plaintiff's counsel's threats to do so on more than one occasion. Plaintiff's counsel alleges that she only decided not to file a motion to quash the subpoena based on defense counsel's representation that the subpoena had been withdrawn (*see* Doc. 42-1); however, the fact remains that no motion to quash was filed.

//

A party objecting to a subpoena must file a motion to quash the subpoena before the deposition date identified in the subpoena (when relevant) or the actual date of production of the requested documents, as is required by the Federal Rules. *See Anderson v. Abercrombie & Fitch Stores, Inc.*, No. 06-CV-991-WQH(BLM), 2007 WL 1994059 at *8 (S.D. Cal. July 2, 2007) (collecting cases). Plaintiff filed the instant motion on July 6, 2015. (Doc. 42.) The Revised Subpoena – even if defective on its face because it was issued from the wrong district court – identified a June 12, 2015, production date. (*See* Doc. 42-2, Exh. A.) Because the June 12, 2015, production date came and went without a timely motion from Plaintiff, he cannot now attack the subpoena's validity through his hybrid ex parte application. *See Anderson*, 2007 WL 1994059 at *8. Plaintiff's failure to file a proper motion to quash – regardless of whether plaintiff's counsel was relying on defense counsel's representation that the subpoena was being re-noticed – is fatal to his request for ex parte relief retroactively invalidating the subpoena.[3]

**D.   The Contested Documents Have Been Properly Sequestered Pending Creation of a Privilege Log**

According to defense counsel's declaration, Plaintiff's Kaiser medical records are sequestered, sealed and unopened, at defense counsel's office, in accordance with Fed. R. Civ. P. 45(e)(2)(B). (*See* Doc. 44-1, ¶ 6.) Defense counsel has offered a compromise to ensure that only medical records relevant to the current case are produced. (*See* Docs. 42-2, Exh. J; 44-1, ¶ 7.) Under defense counsel's proposal, Plaintiff would review his copy of the records and identify the Bate stamp numbers and "the general contents of the documents to which [Plaintiff] object[s]." (Doc. 42-2, Exh. J.) Then,

> If we agree, I will ask First Legal to retrieve the sealed box and remove those pages from the box.
>
> If we disagree, then I would ask that Judge Oberto [ ] review the documents in camera and let us know whether we are entitled to the documents. Those documents [to] which you object will be provided to the [J]udge by you so we will not see them.

---

[3] The Court notes that Plaintiff explicitly requested a copy of the subpoenaed records on June 5, 2015. (*See* Doc. 44-1, Exh. 1.) In that request, a paralegal with the Moore Law Firm noted that Plaintiff's counsel "objected to the subpoena on behalf of . . . Ronald Moore" but that is neither the type of written objection contemplated by Fed. R. Civ. P. 45 nor is it a properly noticed and filed motion to quash the subpoena duces tecum pursuant to Rule 45.

> In the interim, the box remains sealed and unopened until this dispute is resolved. I pledge that I will not open the box or look at its contents until we have an agreed upon resolution.

(Doc. 42-2, Exh. J.)

The Court concludes that despite Plaintiff's failure to timely file a motion to quash the subpoena, this compromise is the best option to both protect Plaintiff's articulated objection to the full breadth of documents produced, which indisputably exceeded the scope of Defendant's Original Subpoena request, as well as Plaintiff's privacy interest.

The parties shall meet and confer to determine how best to accomplish the creation of a privilege log, including the level of specificity required and scope of documents agreed upon to be de facto privileged (such as billing records).[4]

## V.  CONCLUSION AND ORDER[5]

Accordingly, IT IS ORDERED that:

1. Plaintiff's "ex parte application for protective order requiring Defendant to deliver Plaintiff's private medical records obtained against Plaintiff's objection" is DENIED;

2. Within 7 days of this order, Plaintiff will review and prepare a privilege log identifying specific portions or categories of documents within Plaintiff's Kaiser medical records that Plaintiff claims are privileged or otherwise not subject to disclosure, with reference to those documents made by either Bate stamp or any other page numbering system agreed upon between the parties; and

3. If any dispute arises regarding the privilege log, the parties shall make a ***good faith*** effort to meet and confer in person or telephonically, and ***only if*** the dispute cannot be resolved following meaningful meet and confer efforts, the parties may follow the Court's informal discovery dispute procedure for resolution.

IT IS SO ORDERED.

Dated:   **July 16, 2015**                    **/s/ Sheila K. Oberto**
                                                         UNITED STATES MAGISTRATE JUDGE

---

[4] Following ***good faith*** meet and confer efforts, the parties may request the Court's assistance with a review of any disputed privileged materials in camera to determine whether they are indeed privileged.

[5] The Court makes no ruling on Plaintiff's ex parte request "for protective order," as the ex parte application and proposed order do not comply with Local Rule 141(c).