# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | Case No. 1:14-cv-01178-SKO |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S EX PARTE APPLICATION FOR PROTECTIVE ORDER** |
| v. | |
| CHASE, INC., d/b/a SLATER SHELL, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S EX PARTE MOTION TO MODIFY SCHEDULING ORDER** |
| Defendant. | |
| _____/ | (Docs. 49; 50) |

## I.   INTRODUCTION

On July 28, 2015, Defendant Chase, Inc., d/b/a Slater Shell ("Defendant") filed an "ex parte application for protective order along with a declaration by Defendant's counsel Ty Kharazi ("Kharazi"). (Doc. 42.) On July 29, 2015, Plaintiff Ronald Moore ("Plaintiff") filed his oppositions, along with a declaration by Plaintiff's counsel Tanya Moore ("Moore"). (Docs. 44; 45; 46.) On July 30, 2015, Defendant filed replies to Plaintiffs oppositions. (Docs. 53; 54.)

## II.   BACKGROUND

**A.   Factual Background**

On January 19, 2015, a Scheduling Conference was held before the undersigned. (Doc. 21.) Plaintiff's Counsel Tanya Moore and Defendant's counsel Ty Kharazi were telephonically present. (Doc. 21.) On February 12, 2015, the Court issued a Scheduling Order

setting forth all relevant discovery dates and deadlines, as well as setting forth a Settlement Conference and a trial date. (Doc. 22.) The dates were scheduled as follows:

| | |
|---|---|
| Initial Disclosures: | February 5, 2015 |
| Non Expert Discovery: | August 14, 2015 |
| Settlement Conference: | August 24, 2015 |
| Expert Disclosures: | September 14, 2015 |
| Sup. Expert Disclosures: | October 6, 2015 |
| Expert Discovery: | November 10, 2015 |

(*See* Doc. 22.) These dates were set based on the parties' agreement, after meeting and conferring, as set forth in their Joint Scheduling Report. (Doc. 18.)

On June 18, 2015, Plaintiff served deposition notices and subpoenas for Defendant's witnesses. The first notice was served on Defendant Chase, to "designate and produce a person or persons to testify on behalf of Defendant most knowledgeable," for a deposition set for August 10, 2015, at 10:00 a.m. (Doc. 51-2.) The second notice was served on Soheila Darci, for a deposition scheduled August 10, 2015, at 2:00 p.m. (Doc. 50-1.) On July 14, 2015, Defendant's counsel sent a letter to Plaintiff's counsel along with Defendant's Fourth Supplemental Initial Disclosures. (*See* Doc. 51, fn.1.) In the letter, Defendant identified Bob Shiralian in place of Soheila Darci, "as Ms. Darci knows nothing about the operation of this site. Mr. Shiralian [ ] is the president of the Chase [and] will be able to testify about Chase's involvement with the site. I know you have issued a Notice of Deposition for Ms. Darci and I am willing to produce Mr. Shiralian [pursuant to] the same notice." (Doc. 51-2.)

On July 16, 2015, Plaintiff served Defendant with an "Amended Notice of Taking of Deposition of Soheila Darcy and Substituting Deponent Bob Shiralian," set for August 10, 2015, at 2:00 p.m. (Doc. 50-2.) On July 22, 2015, Mr. Shiralian informed Defense counsel for the first time that he will be out of the country from August 7 - September 7, 2015, "a trip which had been planned prior to the setting of the deposition." (Doc. 50, p. 5, Decl. of H. Ty Kharazi.) There is no declaration from Mr. Shiralian himself. (*See generally* Docket.)

//

After learning Mr. Shiralian would not be available, Plaintiff's counsel offered an alternative deposition date of July 28, 2015.  (Docs. 50-3; 50-4.)  Defense counsel declined to change the deposition date to July 28, 2015, because he was in trial.  (Docs. 50, Decl. of H. Ty Kharazi; 50-3; 50-4.)  Defense counsel offered to stipulate to extend the discovery schedule to accommodate Plaintiff's counsel's concerns about the impending close of fact discovery, and Plaintiff's counsel refused.  (Docs. 50, Decl. of H. Ty Kharazi; 50-3; 50-4.)

**B.     Procedural Background**

On July 28, 2015, Defendant filed an Ex Parte Application for Protective Order to prevent Plaintiff from enforcing the subpoena, and an Ex Parte Motion to Modify the Scheduling Order to allow Mr. Shiralian's deposition to take place once he returns from his trip out of the country. (Docs. 49; 50.)

Plaintiff opposed both ex parte motions on the grounds that they are procedurally defective and should have been brought as regular motions, with an ex parte application to shorten the time before they are heard, pursuant to the Local Rules, and because Defendant has not shown good cause for why relief should be granted.  (Docs. 51; 52.)

Defendant filed a reply offering to stipulate to modify the schedule to give Plaintiff sufficient time to finish discovery after Mr. Shiralian's deposition is taken, because there is sufficient time before the trial date to accommodate such modification.   (Docs. 53; 54.) Defendant also states it has shown good cause because "the trip was planned several months in advance and changing plans is not as easy as Plaintiff imagines."  (Doc. 53, p. 1.)

### III.     LEGAL STANDARDS FOR EX PARTE APPLICATIONS

The "opportunities for legitimate ex parte applications are extremely limited." *In re Intermagnetics America, Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989); *see also Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 489 (C.D. Cal. 1995) (to be proper, an ex parte application must demonstrate good cause to allow the moving party to "go to the head of the line in front of all other litigants and receive special treatment").

The use of such a procedure is justified only when (1) there is a threat of immediate or irreparable injury; (2) there is danger that notice to the other party may result in the destruction of

3

evidence or the party's flight; or (3) the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion (*i.e.*, to file an overlong brief or shorten the time within which a motion may be brought). *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013) (citing *Mission Power Eng'g Co.*, 883 F. Supp. at 490). When unwarranted, however, ex parte applications disregard procedural "[s]afeguards that have evolved over many decades [and have been] built into the Federal Rules of Civil Procedure and the Local Rules of this court. The rules contemplate that regular noticed motions are most likely to produce a just result. This is because they give the adversary an opportunity to prepare a thorough opposition (and, if needed, an opportunity for oral argument) according to a predesigned, consistent timetable." *Id.* at 491. As noted by our sister district, the Central District of California:

> Timetables for the submission of responding papers and for the setting of hearings are intended to provide a framework for the fair, orderly, and efficient resolution of disputes. Ex parte applications throw the system out of whack. They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason.

*In re Intermagnetics America, Inc.*, 101 B.R. at 193.

Finally, "[e]x parte applications are not intended to save the day for parties who have failed to present requests when they should have . . . ." *Id.* at 193. "Ex parte applications are a form of emergency relief that will only be granted upon an adequate showing of good cause or irreparable injury to the party seeking relief." *Clark v. Time Warner Cable*, No. CV-07-1797-VBF(RCx), 2007 WL 1334965 (C.D. Cal. May 3, 2007) (citing *Mission Power Eng'g Co.*, 883 F. Supp. at 492). The moving party must be "without fault" in creating the need for ex parte relief or establish that the "crisis [necessitating the ex parte application] occurred as a result of excusable neglect." *Id.* An ex parte application seeks to bypass the regular noticed motion procedure; consequently, the party requesting ex parte relief must establish a basis for giving the application preference. *See id.*

### IV.   DISCUSSION

**A.   The "Ex Parte Application" Is Procedurally Defective and Must Be Denied**

Defendant is referred to the Court's order dated July 17, 2015, denying Plaintiff's "ex parte

4

application for protective order requiring Defendant to deliver Plaintiff's private medical records obtained against Plaintiff's objection." (*See* Doc. 47.) The July 17, 2015, order provided the parties with the legal standard for ex parte applications. This "application" is similarly procedurally defective.

Defendant states that it was necessary to bring the applications ex parte because "Defendant will suffer irreparable injury if the deposition goes forward and the deponent is out of town, including potential monetary and discovery sanctions." (Doc. 50, p. 5, Decl. of Ty Kharazi.) However, the proper procedure for accomplishing Defendant's goal was to serve written objections on Plaintiff, Fed. R. Civ. P. 45(d)(2)(B), or file a regularly noticed motion to quash or modify the subpoena under Rule 45(d)(3) or motion for protective order under Rule 26(c) and then file an ex parte application to shorten the time for the motion to be brought. *See Horne*, 969 F. Supp. 2d at 1205 (citing *Mission Power*, 883 F. Supp. at 490) (ex parte applications permissible where the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion, *i.e.*, to shorten the time within which a motion may be brought). Instead, Defendant has filed ex parte applications for a protective order to prevent Plaintiff from enforcing his deposition subpoena and for an order unilaterally modifying the Scheduling Order. (*See* Docs. 49; 50.) These motion are subject to the regular notice requirements of the Federal Rules of Civil Procedure and Local Rule 251. As a hearing on Defendant's ex parte applications was not properly noticed, the filing is procedurally defective and must be denied on its face.

**B.   The Ex Parte Applications Fail to Demonstrate Ex Parte Relief in the Form of a Protective Order Is Warranted**

Even if Defendant had filed a proper ex parte motion, Defendant has not demonstrated it is entitled to ex parte relief. Ex parte relief is provided when (1) there is a threat of immediate or irreparable injury; (2) there is danger that notice to the other party may result in the destruction of evidence or the party's flight; or (3) the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion (*i.e.*, to file an overlong brief or shorten the time within which a motion may be brought). *Horne*, 969 F. Supp. 2d at 1205.

Here, defense counsel has represented that Mr. Shiralian will be out of the country from August 7 – September 7, 2015, and is therefore unable to attend the deposition on August 10, 2015. (Doc. 50, p. 5, Decl. of Ty Kharazi.) Defense counsel further represents that this trip was planned prior to the setting of the deposition date. (Doc. 50, p. 5, Decl. of Ty Kharazi.) However, this is a date on which Defendant agreed to produce Mr. Shiralian. (Doc. 51-2, Exh. A.) There is no declaration from Mr. Shiralian indicating why, as president of Chase, Inc., a party to this case, he planned a trip out of the country on a date when his personal appearance was required at the settlement conference -- a requirement of which Mr. Shiralian has been aware since the January 29, 2015, scheduling conference. (*See* Docs. 22, Scheduling Order; 49; 50; 53; 54.)

There is no threat of immediate or irreparable injury because Defendant has not demonstrated that Mr. Shiralian will be negatively impacted by altering his travel plans to comply with the subpoena date to which defense counsel specifically agreed. A mere showing that the discovery may involve some inconvenience or expense does not suffice to establish good cause under Rule 26(c). *Turner Broadcasting System, Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev. 1997); *U.S. ex rel. Harris v. Alan Ritchey, Inc.*, No. C00-2191, 2008 WL 859458, at *1 (W.D. Wash. Feb. 27, 2008) ("Mere 'naked assertions' of hardship do not suffice to establish good cause for a protective order under Rule 26(c).").

Here, Defendant has provided no affidavit to support its claim of hardship. Absent such a declaration from Mr. Shiralian, the Court is unable to determine any factual basis for Defendant's motion for protective order. Rule 26(c) requires more than "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." *U.S. E.E.O.C. v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006) (internal quotation and citation omitted). "The party seeking the order must point to specific facts that support the request, 'as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one.'" *Id*. (internal citation omitted).

Significantly, this is not the type of requested relief that could not have been brought in a regularly noticed motion. At any time subsequent to receiving Plaintiff's deposition subpoena, Defendant could have served written objections on Plaintiff or filed a regularly noticed motion to

quash the subpoena or motion for protective order.  Defendant's failure to do so does not entitle it to ex parte relief now -- eleven days before the close of fact discovery on August 14, 2015.

### C. The "Ex Parte Application" Fails to Demonstrate Good Cause that the Requested Relief Should Be Granted

As discussed in the Court's July 17, 2015 order and as set forth above, ex parte applications are a form of emergency relief.  **Ex parte applications are not eleventh hour motions "intended to save the day for parties who have failed to present requests when they should have . . . ."**  *In re Intermagnetics America, Inc.*, 101 B.R. at 193 (emphasis added).  A moving party requesting ex parte relief must be either "without fault" in creating the need for such relief or bears the burden of establishing the crisis necessitating the ex parte application occurred as a result of excusable neglect.  *See Mission Power Eng'g Co.*, 883 F. Supp. at 492.

It is undisputed that on January 29, 2015, the parties were present for a scheduling conference where they agreed to a Settlement Conference on August 24, 2015.  (Docs. 21; 22.)  The parties were aware that "the parties and the person . . . having full authority to negotiate and settle the case on any terms" must be present at the conference.  (Doc. 22, p. 6.)  It is further undisputed that defense counsel agreed to produce Mr. Shiralian for a deposition on August 10, 2015, in place of Ms. Darci.  (Doc. 51-2, Exh. A.)  Once defense counsel informed Plaintiff that it would not produce Mr. Shiralian on August 10, 2015, Plaintiff's counsel offered to conduct the deposition on an alternative date.  (Docs. 50; 51; 52.)  Defendant declined due a trial conflict; however, there is no declaration by defense counsel stating whether or not he sought substitute counsel to attend the alternative deposition date.  (*See* Docket.)  Defendant is not without fault in creating the need for this motion for last-minute relief, and the application is not the result of excusable neglect.  *See In re Intermagnetics America, Inc.*, 101 B.R. at 193; *Mission Power Eng'g Co.*, 883 F. Supp, at 492.)

It is also unclear whether defense counsel notified Mr. Shiralian – the president of defendant Chase, Inc. – that he would not be able to travel out of the country at a time when his presence is necessary at the settlement conference and he may be deposed.  There is no affidavit from Mr. Shiralian explaining the need for a trip out of the county in the midst of looming deadlines in this litigation.  Regardless, Defendant waited until July 28, 2015, to file its ex parte

applications for a protective order and for a modification of the Scheduling Order. Non-expert discovery closes on August 14, 2015. This sort of last-minute attempt to excuse Mr. Shiralian's non-compliance with the deposition subpoena is not the sort of emergency relief ex parte applications are intended to provide to parties litigating in the federal courts. *See In re Intermagnetics America, Inc.*, 101 B.R. at 193.

Defendant has an obligation to produce Mr. Shiralian, the person most knowledgeable for defendant Chase, Inc., for a deposition. However, Plaintiff's counsel is unavailable the week of August 3, 2015, to take Mr. Shiralian's deposition.[1] Due to the unavailability of Plaintiff's counsel to take Mr. Shiralian's deposition this week, the Court will extend the fact discovery cutoff to September 11, 2015, for the *limited purpose* of deposing Mr. Shiralian.

Within seven (7) days of this order, the parties shall agree to a date for Defendant to produce Mr. Shiralian to testify as defendant Chase, Inc.'s person most knowledgeable. The parties shall meet and confer *in good faith* to reset the deposition to a new date on or before September 11, 2015.

## V. CONCLUSION AND ORDER

Accordingly, IT IS ORDERED that:

1. Defendant's ex parte application for a protective order is GRANTED in part and DENIED in part;

2. Defendant's ex parte motion to modify the Scheduling Order is GRANTED in part and DENIED in part;

3. The non-expert discovery deadline is extended to September 11, 2015, for the *limited purpose* of taking the deposition of Bob Shiralian, the person most knowledgeable for Defendant; and

//

//

---

[1] The Court is not drawing any adverse inference from counsel for Plaintiff's unavailability as Plaintiff did not cause this delay and even offered to conduct Mr. Shiralian's deposition on an alternative date to accommodate his travel plans.

8

4. Within seven (7) days of this order, the parties will agree to a date for Defendant to produce Mr. Shiralian for a deposition.

IT IS SO ORDERED.

Dated: **August 3, 2015**  /s/ Sheila K. Oberto
UNITED STATES MAGISTRATE JUDGE