# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RONALD MOORE,

Plaintiff,

v.

CHASE, INC., d/b/a SLATER SHELL,

Defendant.

_____________________________________/

Case No. 1:14-cv-01178-SKO

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

(Doc. 93)

## I. INTRODUCTION

Plaintiff Ronald Moore ("Plaintiff) brings this action against Chase, Inc., d/b/a Slater Shell ("Defendant"), alleging that Defendant discriminated against him based upon his disability as prohibited by Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA") and by state law. (*See generally* Docs. 1 ("Complaint"); 30 ("Amended Complaint").) On January 15, 2016, Plaintiff filed a motion for summary judgment. (Doc. 93.) On February 3, 2016, Defendant filed its opposition, and on February 9, 2016, Plaintiff filed his reply. (Docs. 97; 98.) Having reviewed the parties' papers and all supporting material[1], the matter was deemed

---

[1] This Court has reviewed and considered the record, including all evidence, arguments, points and authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed by the parties. Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the evidence, argument, document, objection or paper. Although this Court has also reviewed, considered and applied the evidence it deemed admissible and material, it does not rule on objections in a summary judgment context, unless otherwise noted.

suitable for decision without oral argument pursuant to Local Rule 230(g), and the hearing was vacated.

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED and judgment shall be entered for Plaintiff.

## II. BACKGROUND

### A. Plaintiff's Contentions

Plaintiff is a Fresno County resident who has used a wheelchair for mobility since 2005. (Doc. 93-2 (Declaration of Plaintiff Ronald Moore), ¶¶ 2-3; 12.) Plaintiff suffers from hydrocephalus, degenerative disc disease, and chronic pain syndrome. (Pl.'s Decl., Exh. A.) As a result of his impairments, Plaintiff is substantially limited in his ability to walk. (Doc. 93-6 (Declaration of Medical Expert Mark Levin, M.D.), ¶ 7; 11-12 (noting Plaintiff "cannot walk more than a few feet without assistance" and "is substantially limited in his ability to walk and a wheelchair would help ameliorate this pain, and [ ] a cane would assist on occasion"); 14 (opining Plaintiff "needs a wheelchair to help ameliorate his pain and minimize his risk of falling"); Pl.'s Decl., ¶ 2 (Plaintiff has difficulties with balance and experiences pain with walking and therefore relies on use of a wheelchair when traveling in public or a cane when walking short distances).)

Plaintiff visited the Slater Shell gas station on Bullard Avenue in Fresno, California ("the facility") on May 29 and June 19, 2014, to purchase gasoline, drinks, and gum. (Pl.'s Decl., ¶ 5; Exh. C (copies of receipts for purchases made during Plaintiff's visits).) Plaintiff alleges he personally encountered a sloped, cracked, and uneven route between the gas pump and the facility entrance; an excessively sloped and narrow ramp leading to the facility entrance; a heavy and outward opening door lacking proper maneuvering clearance; a card reader at the transaction counter positioned too high for Plaintiff to reach; and aisles within the facility lacking necessary wheelchair clearances. (Pl.'s Decl., ¶¶ 7-10.) On Plaintiff's May 29, 2014, visit, he alleges one of the wheels on his wheelchair became caught on a rack due to lack of clearance. (Pl.'s Decl., ¶ 9.)

Plaintiff seeks an injunction requiring Defendant to remove all barriers he personally encountered, as well as all barriers which exist at the facility and relate to his disabilities, to afford him full and equal access. (Pl.'s Decl., ¶ 11.) Plaintiff lives less than five miles from the facility

and estimates, based on a variety of subjective factors, that he will visit the facility twice a year once it is made accessible to him. (Pl.'s Decl., ¶¶ 13; 14.)

**B. Defendant's Contentions**

Defendant contends that Plaintiff does not require the use of a wheelchair and has never been prescribed the use of a wheelchair. (*See* Defendant's Response to Plaintiff's Statement of Undisputed Material Facts ("DUMF") No. 3; Declaration of H. Ty Kharazi, ¶¶ 4-11.) Defendant further contends that there are disputed facts as to whether Plaintiff actually visited the facility. (DUMF No. 26; Doc. 97, p. 10; *see* Kharazi Decl., Exh. 10.) Finally, Defendant contends that Plaintiff's failure to join the tenant of the facility, Yadollah Massaghian, is fatal to Plaintiff's action "because complete relief cannot be awarded without his joinder." (DUMF Nos. 33, 34; Doc. 97, pp. 10-11.)

**C. Procedural Background**

Plaintiff seeks injunctive relief and damages based on both those barriers he personally encountered in his visit to Defendant's facility and those later discovered during the inspection. (Doc. 30.) On January 15, 2016, Plaintiff filed his motion for summary. (Doc. 93.) Defendant filed an opposition (Doc. 97), Plaintiff filed a reply (Doc. 98), and the matter was taken under submission without oral argument (Doc. 100).

## III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Id.* (internal quotation marks and citation omitted).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." *Id.* at 984. In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *see also FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor"). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this respect. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the province of the jury or fact finder. *See Anderson*, 477 U.S. at 255. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual

predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

## IV. RELEVANT LAW

### A. Title III of the Americans with Disabilities Act

The ADA was adopted to address discrimination against individuals with disabilities. *See Cohen v. City of Culver City*, 754 F.3d 690, 694 (9th Cir. 2014). The statute was enacted on the understanding that discrimination against the disabled is "most often the product, not of invidious animus, but rather of thoughtlessness and indifference – of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985). "Therefore, the ADA proscribes not only obviously exclusionary conduct, but also more subtle forms of discrimination – such as difficult-to-navigate restrooms and hard-to-open doors – that interfere with disabled individuals' full and equal enjoyment of public places and accommodations." *Cohen*, 754 F.3d at 694 (internal quotation marks omitted).

Title III of the ADA prohibits discrimination against people "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodation of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv). Readily achievable means "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* § 12181(9). Federal regulations clarify which barrier removals are likely to be readily achievable and provide examples in title 28 of the Code of Federal Regulations section 36.304. The U.S. Justice Department has referred to these examples as "the types of modest measures that may be taken to remove barriers and that are likely to be readily achievable." Appendix B to Part 36-Preamble to Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35,546 (July 26, 1991); *see also* 28 C.F.R. § 36 App. A.

To prevail on their ADA claim, plaintiffs must show that (1) they are disabled within the meaning of the ADA; (2) defendants are private entities that own, lease, or operate a place of public accommodation; and (3) plaintiffs were denied public accommodations by defendants

because of their disabilities. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Private parties or the Attorney General may enforce the ADA. 42 U.S.C. § 12188. Specifically, private parties may utilize the remedies and procedures available under the Civil Rights Act of 1964. *Id.* § 12188(a)(1) (citing § 2000a-3(a)). While a private party may seek equitable relief, monetary damages are unavailable in private suits. *Molski*, 481 F.3d at 730.

**B. California's Disability Discrimination Statutes**

In the disability context, the California "Unruh Act" incorporates ADA standards. *Californians for Disability Rights v. Mervyn's LLC*, 165 Cal. App. 4th 571, 586 (2008). However, unlike the ADA, the Unruh Act allows for monetary damages. The Unruh Act provides for statutory damages of $4,000 for each occasion a disabled person was denied equal access. Cal. Civ. Code § 52(a).

## V. DISCUSSION[2]

**A. Defendant Has Not Demonstrated Plaintiff Lacks Standing**

Defendant contends Plaintiff has failed to demonstrate he has standing to pursue this action. Defendant alleges that Plaintiff does not require the use of a wheelchair and therefore lacks standing to pursue an injunction for any barriers encountered due to his use of a wheelchair. To demonstrate Article III standing, a plaintiff must plead (1) injury-in-fact, (2) causation, and (3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In this case, the only dispute is whether Plaintiff sufficiently pled facts demonstrating his federal standing, which turns on the "nature and source" of Plaintiff's claim under the ADA. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (en banc) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). An ADA plaintiff has suffered an injury-in-fact when

---

2 Defendant's allegations and evidence submitted regarding Plaintiff's alleged litigation scheme, including a list of PACER search results featuring cases filed by Plaintiff's counsel and evidence that Plaintiff's expert Geoshua Levin's California Certified Access Specialist (CASp) certification has been suspended (*see* Kharazi Decl., Exhs. 4, 5), will not be addressed in this order because evidence concerning a plaintiff's litigation patterns has *no bearing* on the validity of a plaintiff's accessibility claims in the Ninth Circuit. *See Molski*, 500 F.3d 1047 (stating that individuals may properly bring multiple complaints under the ADA against different places of public accommodation, and that "it may indeed be necessary and desirable for committed individuals to bring serial litigation" to advance statutory anti-discrimination goals); *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2007) (stating that "we cannot agree that [Plaintiff's] past ADA litigation was properly used to impugn her credibility"). *See also Bodett v. CoxCom, Inc.*, 366 F.3d 736, 740 n.3 (9th Cir. 2004) (iterating general principle that in the summary judgment context, a party cannot create a dispute of fact by simply questioning the credibility of the witness).

he encounters "a barrier that deprives him of full and equal enjoyment of the facility due to his particular disability." *Id*. at 944 (emphasis added). The plaintiff must therefore show the "necessar[y] link[ ] to the nature of his disability" to properly plead standing. *Id*. at 947 n.4.

The first question before the Court is whether Plaintiff is disabled within the meaning of the ADA and therefore has standing to seek injunctive relief for barriers encountered that relate to his "particular disability." *Id.* A plaintiff is "disabled" under the ADA if he demonstrates that he has a physical or mental impairment that substantially limits a major life activity. *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F3d 879, 884 (9th Cir. 2004). Congress has specifically instructed that "disability" is to be construed broadly. 42 U.S.C. § 12102(4); 42 U.S.C. § 12101 Note, Findings and Purposes of ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (2008) (indicating that "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis").

Plaintiff has presented evidence that he is disabled by hydrocephaly, degenerative disc disease, and chronic pain syndrome, which "substantially limit" his ability to walk, a "major life activity" under the ADA. (Levin M.D. Decl., ¶¶ 7-14; Pl.'s Decl., ¶¶ 2-3.) *See* 29 C.F.R. §§ 1630.2(g)(1) (defining "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual"); (i) (defining "major life activity" to including walking). Plaintiff relies on a wheelchair for mobility, and while he admits that he is physically capable of walking short distances, he asserts that he risks pain and injury from falling when doing so. (Levin M.D. Decl., ¶¶ 11-12, 14; Pl.'s Decl., ¶¶ 5-7.)

Defendant contends that Plaintiff does not medically require the use of a wheelchair and has never been prescribed a wheelchair (*see* Docs. 97-1 at pp. 8-10; 97-17; 97-20; 97-21); however, there is no requirement that a disabled person medically require the use of a wheelchair to establish disability, *see* 29 C.F.R. § 1630, *et seq.*; *Daubert v. Lindsay Unified School Dist.*, 760 F.3d 982 (9th Cir. 2014) (a plaintiff who is unable to walk without the use of a mobility aid such as a wheelchair or cane is disabled within the meaning of the ADA); *Wilson v. Haria and Gogri Corp.*, 479 F. Supp. 2d 1127 (E.D. Cal. 2007) (disability does not require permanent incapacitation, and an individual who can choose to walk with difficulty may still be disabled

under the ADA); *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998) ("[w]hen significant limitations result from the impairment, the definition is met even if the difficulties are not insurmountable").

Even assuming, *arguendo*, that Plaintiff has never been prescribed a wheelchair and does not medically require a wheelchair, these facts fail to contradict Plaintiff's evidence that his physical impairments impede his mobility. Plaintiff has demonstrated he is disabled under the ADA and has alleged in his complaint that he relies on a wheelchair for mobility; in the Ninth Circuit, this is sufficient to establish standing to challenge barriers for wheelchair-bound persons, including both those barriers Plaintiff personally encountered and those later discovered during inspection of the facility. *See O'Campo v. Bed Bath & Beyond of Cal., LLC*, 610 F. App'x 706, 708 (9th Cir. 2015). Because Plaintiff has put forward evidence demonstrating a disability impairing his mobility and Defendant has not offered evidence capable of refuting that Plaintiff is disabled under the ADA, Defendant has failed to establish the existence of a genuine issue of material fact as to whether Plaintiff is disabled.

The second question before the Court is whether there is an issue of material fact that Plaintiff encountered architectural barriers under the ADA. *Chapman*, 631 F.3d at 945. Plaintiff alleges he personally encountered barriers in the gas station when visiting the facility on May 29 and June 19, 2014, and offers dated receipts from the facility to verify his visit. (Pl.'s Decl., ¶¶ 5-10, Exh. C.) Defendant contends that Plaintiff never entered the facility and offers in support of this theory the deposition testimony of an employee who did not remember seeing Plaintiff in the facility. (Kharazi Decl., ¶ 10, Exh. 10 (Deposition of Fernando Fernandez).) However, a party's challenge to the weight of the evidence or to the credibility or bias of witnesses does not create a triable issue of fact that would preclude summary judgment. *Siddiqui v. AG Communication Systems Corp.*, 233 F. App'x 610, 613 (9th Cir. 2007); *see also Bodett*, 366 F.3d at n.3 (9th Cir. 2004) (stating "A party cannot create a dispute of fact by simply questioning the credibility of a witness"). Defendant's attempt to discredit Plaintiff's testimony (*see* Doc. 97, p. 10) is therefore unavailing.[3]

---

[3] Further, even if the Court considered Defendant's arguments, the evidence Defendant submitted to dispute Plaintiff's credibility is insufficient to create a genuine dispute. Defendant cites to the deposition of Fernando Fernandez, the cashier whose name appears on the receipts Plaintiff relies upon to demonstrate he actually visited the

Because Plaintiff has put forward sufficient affirmative evidence demonstrating his visits to the facility, including his statement describing the visits in detail corroborated with the dated receipts issued by the facility, and Defendant has failed to provide affirmative evidence rebutting Plaintiff's visits, Defendant has failed to raise a genuine issue of material fact as to whether Plaintiff visited the facility.

**B. Defendant Has Not Provided Affirmative Evidence Contradicting Plaintiff's Evidence of Barriers to His Full and Equal Access Exist within the Facility**

The Americans with Disabilities Act Accessibility Guidelines ("ADAAG"), 28 C.F.R. Part 36, App. A), provide the "objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman*, 631 F.3d at 945; *Pascuiti v. N.Y. Yankees*, 87 F. Supp. 2d 221, 225 (S.D.N.Y. 1999) ("barriers" are defined as "any element in a facility that does not meet or exceed the requirements set forth in [the ADAAG]") (quoting a letter from the Department of Justice).

Promulgated by the Attorney General to implement the ADA requirements, the ADAAG guidelines establish "the technical structural requirements of places of public accommodation." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080-1081 (9th Cir. 2004). Facilities built after January 26, 1993, must comply with new construction standards identified in governing ADAAG regulations, regardless of whether removal is readily achievable or not. 42 U.S.C. § 12183(a)(1); *see Antoninetti v. Chipotle Mexican Grill, Inc.*, 614 F.3d 971, 976 (9th Cir. 2010). Governing regulations for facilities constructed or altered before September 15, 2010, are the 1991 ADAAG. 28 C.F.R. § 36.406(a)(1). For facilities built before January 26, 1993, it is a violation of the ADA when a public accommodation fails "to remove architectural barriers . . . where such removal is readily achievable," defined as "easily accomplishable and able to be carried out

---

facility, as evidence that Plaintiff never actually visited the facility on May 29 or June 19, 2014. (Kharazi Decl., Fernandez Depo.) However, the fact that Mr. Fernandez did not remember seeing Plaintiff personally on those dates is not sufficiently probative to discredit Plaintiff's testimony nor to dispute the fact that Plaintiff was actually there. *See Langer v. Adriatic Vacation Club, Inc.*, 2015 U.S. Dist. LEXIS 143398, at n.4.

The Court further notes that Mr. Fernandez's deposition testimony is uncertain and ambivalent at best, repeatedly equivocating that he while he doesn't recognize Plaintiff, he "do[es]n't remember" whether he ever saw Plaintiff and emphasizing that he "see[s] a lot people." (*See* Fernandez Depo., 25:20-26:4, 27:13-24; 28:8-17; 36:1-4.) This is not sufficient evidence demonstrating the existence of a genuine issue of material fact.

without much difficulty or expense." 42 U.S.C. §§ 12181(9); 12182(b)(2)(A)(iv).

Here, Plaintiff concedes Defendant's facility was "apparently constructed prior to January 26, 1993," and therefore falls into the latter category. (Doc. 93-1, pp. 12-13.) As an "existing facility," Defendant therefore would have been entitled to demonstrate that barrier removal or alternative methods of accessibility are not readily achievable. *See* 42 U.S.C. §§ 12182(b)(2)(A)(iv)-(v). However, because Defendant failed to plead such an affirmative defense in its answer to Plaintiff's amended complaint (*see* Doc. 20 (Answer to Amended Complaint)), that affirmative defense is waived, *see Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d at 1133 (because "defendant has failed to plead that barrier removal is not readily achievable in its answer. . . . the defense is waived.").[4] Therefore, the Court will apply the ADAAG guidelines for "new construction" to Defendant's facility to determine whether Plaintiff encountered barriers to his full and equal access at the time of his visits and whether any barriers remain.

ADAAG requirements are precise and inflexible. *Chapman*, 631 F.3d at 945. Facilities must comply exactly with the technical specifications set forth in the ADAAG, and compliance with the spirit of the law is not sufficient to preclude ADA violations. *Long v. Coast Resorts, Inc.*, 267 F.2d 918, 923 (9th Cir. 2001). "[T]he difference between compliance and noncompliance with the standard [established in the ADA] is often a matter of inches." *Chapman*, 631 F.3d at 945. The alleged barriers Plaintiff has identified will be evaluated pursuant to the current federal accessibility standards for alterations and new construction, known as the 2010 ADA standards for Accessible Design ("2010 standards"). 28 C.F.R. § 36.304(d)(2)(ii)(B); *Kohler v. Flava*

---

[4] The Court notes Defendant contends that it has pled an affirmative defense that barrier removal is not readily achievable. (DUMF, No. 16 (referring the Court to Defendant's Thirteenth Affirmative Defense in its answer to the amended complaint).) However, Defendant did not plead an affirmative defense that barrier removal is not readily achievable. (*See* Doc. 30, p. 4.) Rather, Defendant pled an affirmative defense that alternatives to barrier removal had been provided. (*Id.*) Though related, these are not interchangeable affirmative defenses to Plaintiff's allegations. Regardless, Defendant has not offered or cited to any evidence demonstrating that barrier removal is not readily achievable at the facility.

The regulations provide that if compliance under those additional regulations would not be readily achievable, "a public accommodation may take other readily achievable measures to remove the barrier that do not fully comply with the specified requirements." 28 C.F.R. § 36.304(d)(2). A facility may only substitute alternatives to barrier removal where "as a result of compliance with the alterations requirements specified in paragraph (d)(1) of this section, the measures required to remove a barrier would not be readily achievable." 28 C.F.R. § 36.304(d)(2). Even liberally construed, Defendant's thirteenth affirmative defense that "an alternative to barrier removal was provided" cannot be construed the same as "barrier removal is not readily achievable."

*Enterprises*, 779 F.3d 1016, 1019 (9th Cir. 2015).

Plaintiff alleges the facility contains twenty-three architectural barriers under the ADA. (Doc. 93-1, pp. 18-28.) While Defendant does not directly deny the existence of any architectural barriers, it does contest the facts underlying several of the barriers Plaintiff has identified.[5] (Doc. 96-16.) The Court analyzes the twenty-three alleged barriers in turn.

**1. Barriers Plaintiff Personally Encountered**

**a. Route of Travel between Fuel Pumps and Marked Accessible Route**

Under ADAAG § 4.5.1, surfaces along accessible routes are required to be "stable and firm," and under ADAAG § 4.5.2, changes in level that are "between ¼ and ½ [an inch] shall be beveled with a slope no greater than 1:2." 28 C.F.R. pt. 36, App. A, §§ 4.5.1, 4.5.2. Plaintiff alleged in his amended complaint that after parking at a gas pump, he encountered a route of travel that "was sloped, cracked and uneven, which made it difficult for Plaintiff to maneuver." (Am. Compl., ¶ 10(a).) Plaintiff contends the area between the fuel pumps and the delineated accessible route from the North First Street public sidewalk to the designated accessible parking access aisle contained large cracks, which create excessive slopes and vertical height changes exceeding ¼ inch. (Doc. 93-1, pp. 18-19.) Plaintiff's expert witness specifies that the ramp creates a vertical change greater than ¼ inch and gaps within the walking surfaces greater than ½ inch. (Doc. 93-4 (Declaration of Plaintiff's Access Expert Michael Bluhm), ¶ 15; Exh. 8.)

Defendant characterizes these facts as "disputed," but does not offer affirmative evidence rebutting Plaintiff's measurements. (DUMF, No. 17; *see also* Doc. 93-11, Exh. D (Deposition of Defense Access Expert David C. Horn), 65:19-25 (admitting allegation 10(a) in the amended complaint).) Accordingly, there is no genuine dispute that Defendant violated the ADAAG on this issue.

//

//

---

[5] The Court notes that the expert report upon which Defendant relies to dispute the existence of these barriers at the facility, a Shell station located on East Bullard Avenue in Fresno, is actually a report on an Arco station located on North Golden State Boulevard in Fresno, a facility apparently involved in an unrelated action, *Moore v. Millennium Acquisition, LLC, et al.*, Civ. No. 1:14-CV-1402-DAD-SAB. (*See* Doc. 97-14.)

**b.      Exterior Ramp**

Under ADAAG § 4.6.3, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions, and under ADAAG § 4.3.3, where a person in a wheelchair is required to make a 90-degree turn around an obstruction, the minimum clear width of the accessible route must be 36 inches.  28 C.F.R. pt. 36, App. A, §§ 4.3.3, 4.6.3.  Plaintiff alleged in his amended complaint that the ramp from the parking lot to the sidewalk leading to the facility entrance was "excessively sloped and narrow, with its width obstructed by a newsletter box."  (Am. Compl., ¶ 10(b).)  Plaintiff contends the slope of the ramp, which is located within the designated accessible parking stall, is 13.1%, far exceeding the maximum slope under the ADAAG, and the newsletter box positioned near the corner of the facility at the time of his visit reduced the clear width of the walkway to less than 36 inches.  (Doc. 93-1, p. 19.)  Plaintiff's expert witness specifies that upon measurement, the slope along the route of travel up to the walkway was 13.1% (Bluhm Decl., ¶ 12; Exh. 6), and Defendant's expert measured the slope at 13.9% (Horn Depo., 79:18-21).  Plaintiff's fact witness testifies that on June 11, 2014, he visited the facility and personally observed a newsletter box position on the walkway.  (Doc. 93-8 (Declaration of Geoshua Levison), ¶ 2.)

Because Defendant does not contest Plaintiff's facts (DUMF, 26), there is no genuine dispute that Defendant violated the ADAAG on this issue.

**c.      Card Reader**

Under ADAAG § 4.2.6, where a person in a wheelchair must reach over an obstruction, that obstruction must be no more than 34 inches in height.  28 C.F.R. pt. 36, App. A, § 4.2.6.  Plaintiff alleged in his amended complaint that the card reader was positioned too high for him to reach.  (Am. Compl., ¶ 10(d).)  Plaintiff contends the credit card machine is set back from the front of the counter by five inches and the height of the counter is over 36 inches.  (Doc. 93-1, p. 20.)  Plaintiff's expert witness testified that the height of the counter exceeds 36 inches (Bluhm Decl., ¶ 25; Exh. 21), and Defendant's expert concurred (Horn Decl., 65:19-25 (admitting allegation 10(d) in the amended complaint)).

//

Because Defendant does not dispute Plaintiff's allegation that use of the credit card reader requires reaching over an obstruction over 34 inches in height (DUMF, No. 18), there is no genuine dispute that Defendant violated the ADAAG on this issue.

**d. Aisle Clearance**

Under ADAAG § 4.3.3, the minimum clear width of an accessible route must be 36 inches, and where a person in a wheelchair is required to turn around an obstruction shorter than 48 inches in length, the minimum clear width of the accessible route must be 42 inches. 28 C.F.R. pt. 36, App. A, § 4.3.3. Plaintiff alleged in his amended complaint that the aisles in the facility lacked necessary wheelchair clearances, making it difficult to maneuver around the convenience store. (Am. Compl., ¶ 10(e).) Plaintiff contends the aisles measure between 32 and 40 inches in width and lack proper u-turn clearances. (Doc. 93-1, pp. 20-31.) Defendant's expert witness conceded the allegations of the amended complaint. (Horn Depo., 62:7-13 (noting widths of 32 - 68 inches); 65:19-25 (admitting allegation 10(e) in the amended complaint); 76:15-24 (noting no u-turn space provided in widths of the aisles).)

Because Defendant concedes Plaintiff's allegation that aisles within the convenience store are less than 36 inches and the dead-end aisle in the convenience store lacks sufficient turning clearance (DUMF, Nos. 33-34), there is no genuine dispute that Defendant violated the ADAAG on this issue.

**2. Barriers Identified After Inspection**

**a. No Properly Configured and Identified Accessible Routes**

Under ADAAG § 4.3.8, if an accessible route has changes in level greater than ½ inch, then a curb ramp, ramp, elevator, or platform lift must be provided. 28 C.F.R. pt. 36, App. A, § 4.3.8. Plaintiff's expert specifies that there is no ramp to the entrance of the auto repair shop office/waiting area. (Bluhm Decl., ¶ 19; Exh. 14.) Defendant disputes that there is no "mechanic shop office/waiting area at the facility." (Doc. 97-16, No. 19.) However, Defendant's contention regarding the characterization of the name of the mechanic shop area does not contradict Plaintiff's evidence that this area is accessible to the public and Plaintiff's expert's measurements demonstrating that this area violates the ADA. (*See* (Doc. 98-1 (Plaintiff's Reply to Defendant's

Statement of Undisputed Facts ("PRUMF"), No. 19 (pointing to testimony by facility tenant Yadollah Missaghian that while the area is not generally used as a waiting room, it is open to the public and he would not require any member of the public to leave); Doc. 98-3, Exh. G (Deposition of Yadollah Missaghian), 54:5-56:23, 65:5-10.) Because Defendant does not provide any affirmative evidence to the contrary, there is no genuine dispute that Defendant violated the ADAAG on this issue.

Under ADAAG § 4.3.2, at least one accessible route shall connect accessible building or facility entrances with all accessible spaces and elements. 28 C.F.R. pt. 36, App. A, § 4.3.2. Defendant's expert conceded that there is no properly configured accessible route of travel from the fuel pumps to the facility entrance. (Horn Depo., 55:13-4.) Because Defendant does not provide any affirmative evidence to the contrary, there is no genuine dispute that Defendant violated the ADAAG on this issue.

**b. Slope of Accessible Route of Travel**

Under ADAAG § 4.3.7, the cross slope of an accessible route cannot exceed 1:50 (2%). 28 C.F.R. pt. 36, App. A, § 4.3.7. Plaintiff's expert witness specifies that the route to the left of the designated accessible parking stall to reach the walkway to the facility entrance contains cross slopes of at least 4.6% (Bluhm Decl., ¶ 13; Exh. 7), and Defendant's expert concurred with this measurement (Horn Depo., 66:1-8 (admitting allegation 11(d) in the amended complaint)). Because Defendant does not provide any affirmative evidence to the contrary, there is no genuine dispute that Defendant violated the ADAAG on this issue.

**c. Wheel Stops**

Under ADAAG § 4.2.1, the minimum clear width for single-wheelchair passage must be 32 inches "at a point" and 36 inches continuously. 28 C.F.R. pt. 36, App. A, § 4.2.1. Plaintiff's expert witness specifies that no wheel stops are provided at the parking stalls along the walkway to the facility entrance (Bluhm Decl., ¶ 16; Exh. 9), and Defendant's expert concurred (Horn Depo., 66:1-8 (admitting allegation 11(e) in the amended complaint)). Because Defendant does not provide any affirmative evidence to the contrary, there is no genuine dispute that Defendant violated the ADAAG on this issue.

**d. Walkway and Door Landing Slopes**

Under ADAAG § 4.3.7, cross slopes of an accessible route may nowhere exceed 1:50 (2%), and under ADAAG § 4.13.6, the floor or ground area within the required maneuvering clearance at doors must be level and clear. 28 C.F.R. pt. 36, App. A, §§ 4.3.7, 4.13.6. Plaintiff's expert witness specifies that the walkway and door landing serving the mechanic shop contain cross slopes of 2.6%. (Bluhm Decl., ¶ 20; Exh. 15.) Defendant disputes that there is no "mechanic shop office/waiting area at the facility." (Doc. 97-16, No. 23.) However, Defendant's contention regarding the characterization of the name of the mechanic shop area does not contradict Plaintiff's evidence that this area is generally accessible to the public and Plaintiff's expert's measurements demonstrating that this area violates the ADA. (*See* PRUMF, No. 23 (pointing to testimony by facility tenant Yadollah Missaghian that while the area is not generally used as a waiting room, it is open to the public and he would not require any member of the public to leave); Missaghian Depo., 54:5-56:23, 65:5-10.) Because Defendant does not provide any affirmative evidence to the contrary, there is no genuine dispute that Defendant violated the ADAAG on this issue.

**e. Fuel Area Paper Towel Dispensers**

Under ADAAG § 4.2.5, reach range to operable parts shall not exceed 48 inches from the ground. 28 C.F.R. pt. 36, App. A, § 4.2.5. Plaintiff's expert witness specifies that the operable parts measured over 56 inches high (Bluhm Decl., ¶ 21; Exh. 16), and Defendant's expert concurred with this measurement (Horn Depo., 66:1-8 (admitting allegation 11(i) in the amended complaint); 72:7-17 (noting his own measurement of the height at 52 inches)). Because Defendant does not dispute Plaintiff's allegation (DUMG No. 24), there is no genuine dispute that Defendant violated the ADAAG on this issue.

**f. Clear Floor Space at Fuel Area Paper Towel Dispensers**

Under ADAAG § 4.2.4.1, a minimum 30 by 48 inch clear floor space is required for a wheelchair. 28 C.F.R. pt. 36, App. A, § 4.2.4.1. Plaintiff's expert witness measured the dimension of the floor space at the paper towel dispensers and found it did not meet the 30 by 40 inch requirement for clear floor space (Bluhm Decl., ¶ 22; Exh. 17), and Defendant's expert

concurred (Horn Depo., 66:1-8 (admitting allegation 11(j) in the amended complaint)). Because Defendant does not provide any affirmative evidence to the contrary, there is no genuine dispute that Defendant violated the ADAAG on this issue.

**g. Excessive Slopes at Designated Accessible Parking Stall**

Under ADAAG § 4.6.3, parking and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 28 C.F.R. pt. 36, App. A, § 4.6.3. Plaintiff's expert witness specifies that the slope of the ramp, which is located within the designated accessible parking stall, is 13.1% and the access aisle contains slopes of 3.4% to 4.1% (Bluhm Decl., ¶¶ 12, 23; Exhs. 6, 18), and Defendant's expert concurred (Horn Depo., 79:5-12 (noting his own measurement of 3.7% slope of the access aisle); 79:18-21 (noting his own measurement of 13.9% slope of the ramp)). Because Defendant does not dispute Plaintiff's allegations (DUMF, No. 26), there is no genuine dispute that Defendant violated the ADAAG on this issue.

**h. Proper Maneuvering Clearance at Convenience Store Push Side Doors**

Under ADAAG § 4.13.6 (Figure 25), at least 48 inches of clearance perpendicular to the door is required on the push side. 28 C.F.R. pt. 36, App. A, § 4.13.6. Plaintiff's expert witness specifies that the maneuvering clearance on the push side of the door is only 45 inches perpendicular to the door (Bluhm Decl., ¶ 17; Exh. 11), and Defendant's expert concurred (Horn Depo., 45:15-46:4 (noting his own measurement of 46 inches of clearance)). Because Defendant does not dispute Plaintiff's allegations (DUMF, No. 28), there is no genuine dispute that Defendant violated the ADAAG on this issue.

**i. Proper Maneuvering Clearance at Mechanic Shop Doors**

As set forth above, under ADAAG § 4.13.6 (Figure 25), at least 48 inches of clearance perpendicular to the door is required on the push side. 28 C.F.R. pt. 36, App. A, § 4.13.6. Plaintiff's expert witness specifies that the exterior pull side landing measures approximately 36 inches perpendicular to the door and the interior push side landing measures approximately 28.5 inches perpendicular to the door. (Bluhm Decl., ¶ 24; Exhs. 19-20.) Defendant disputes that there is no "public auto repair shop office/waiting area" at the facility. (Doc. 97-16, No. 30.) However, Defendant's contention regarding the characterization of the name of the mechanic shop area does

not contradict Plaintiff's evidence that this area is generally accessible to the public and Plaintiff's expert's measurements demonstrating that this area violates the ADA. (*See* PRUMF, No. 30 (pointing to testimony by facility tenant Yadollah Missaghian that while the area is not generally used as a waiting room, it is open to the public and he would not require any member of the public to leave); Missaghian Depo., 54:5-56:23, 65:5-10.) Because Defendant offers no affirmative evidence to the contrary, there is no genuine dispute that Defendant violated the ADAAG on this issue.

**j. Transaction Counter**

Under ADAAG § 7.2, transaction counters must have an accessible portion at least 36 inches in length with a maximum height of 36 inches. 28 C.F.R. pt. 36, App. A, § 7.2. Plaintiff's expert witness specifies that the transaction counter is over 36 inches in height and the clear space on top of the counter is approximately 21 inches long. (Bluhm Decl., ¶ 25; Exh. 21.) Defendant's expert concurred. (Horn Depo., 77:16-19 (noting his own measurement of 35 and 36.5 inches in height); 78:19-24 (noting his own measurements of 21 and 21.5 inches in length).) Because Defendant does not materially dispute Plaintiff's allegations that the measurements exceed the maximum measures under the ADAAG (DUMF, Nos. 31 (disputing Plaintiff's measurements on the basis of Defendant's expert's measurements of 35 and 36.5 inches, one of which still exceeded the maximum allowable height); 32 (conceding Plaintiff's measurements), there is no genuine dispute that Defendant violated the ADAAG on this issue.

**k. Self-Service Coffee Dispenser**

Under ADAAG § 4.2.5, reach range to operable parts cannot exceed 48 inches from the floor. 28 C.F.R. pt. 36, App. A, § 4.2.5. Plaintiff's expert witness specifies that the activating pump for the self-service coffee dispenser measures 49 inches above the floor and the stacked soda cups are more than 48 inches from the floor to the top cup of the stack (Bluhm Decl., ¶ 26-27; Exhs. 22-23), and Defendant's expert concurred with this allegation (Horn Depo., 66:1-8 (admitting allegation 11(t) in the amended complaint)). Because Defendant does not dispute Plaintiff's allegations (DUMF, Nos. 35-36), there is no genuine dispute that Defendant violated the ADAAG on this issue.

**l. Unisex Restroom Door**

Under ADAAG § 4.13.11(b), the operating pressure of interior hinged doors must be 5 pounds at maximum. 28 C.F.R. pt. 36, App. A, § 4.13.11(b). Plaintiff's expert witness specifies that the highest restroom door requires approximately 14 pounds of pressure to operate. (Bluhm Decl., ¶ 28; Exh. 24.) Because Defendant does not dispute Plaintiff's allegations (DUMF, No. 37), there is no genuine dispute that Defendant violated the ADAAG on this issue.

**m. Unisex Restroom Floor**

Under ADAAG § 4.13.6, the floor or ground area within the required clearances must be level and clear. 28 C.F.R. pt. 36, App. A, § 4.13.6. Plaintiff's expert witness specifies that the floor within the required clear floor space at the toilet, lavatory, and doorway contains slopes of 2.8% to 3% (Bluhm Decl., ¶ 29; Exh. 25), and Defendant's expert concurred (Horn Depo., 66:1-8 (admitting allegation 11(w) of the amended complaint)). Because Defendant does not dispute Plaintiff's allegations (DUMF, No. 38), there is no genuine dispute that Defendant violated the ADAAG on this issue.

**n. Unisex Restroom Knee Clearance**

Under ADAAG § 4.19, a clearance of at least 29 inches above the "finish floor" to the bottom of the "apron" is required. 28 C.F.R. pt. 36, App. A, § 4.19. Plaintiff's expert witness specifies that the knee clearance beneath the lavatory measured less than 27 inches from the floor (Bluhm Decl., ¶ 30; Exh. 26), and Defendant's expert concurred with this allegation (Horn Depo., 66:1-8 (admitting allegation 11(x) in the amended complaint)). Because Defendant does not dispute Plaintiff's allegations (DUMF, No. 39), there is no genuine dispute that Defendant violated the ADAAG on this issue.

**o. Unisex Restroom Plumbing**

Under ADAAG § 4.19.4, hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 28 C.F.R. pt. 36, App. A, § 4.19.4. Plaintiff's expert witness testifies that the water supply pipes underneath the lavatory are not insulated (Bluhm Decl., ¶ 31; Exh. 27), and Defendant's expert concurred (Horn Depo., 66:1-8 (admitting allegation 11(y) in the amended complaint)). Defendant disputes this allegation (DUMF No. 40),

but offers no affirmative evidence to contradict Plaintiff's evidence. Because Defendant does not offer affirmative evidence to the contrary, there is no genuine dispute that Defendant violated the ADAAG on this issue.

**p. Unisex Restroom Side Transfer Clearances**

Under ADAAG § 4.16.2 (Figure 28), clear floor space for restrooms that are not in stalls must be 60 inches measured along the wall containing the back of the toilet. 28 C.F.R. pt. 36, App. A, § 4.16.2. Plaintiff's expert witness specifies that there is a table within the required clear space at the toilet and the distance between the table and the side wall nearest the toilet is approximately 57.5 inches (Bluhm Decl., ¶ 32; Exh. 28), and Defendant's expert concurred with this allegation (Horn Depo., 66:1-8 (admitting allegation 11(z) of the amended complaint)). Because Defendant does not dispute Plaintiff's allegations (DUMF, No. 41), there is no genuine dispute that Defendant violated the ADAAG on this issue.

**q. Unisex Restroom Side and Rear Grab Bars**

Under ADAAG § 4.16.4 (Figure 29), side grab bars for restrooms that are not in stalls must extend 54 inches from the rear wall and rear grab bars must extend at least 24 inches from the centerline of the toilet on the open side. 28 C.F.R. pt. 36, App. A, § 4.16.4. Plaintiff's expert witness specifies that the rear grab bar extends 21 inches from the centerline of the toilet and the side grab bar extends 48 inches from the rear wall (Bluhm Decl., ¶ 33; Exh. 29), and Defendant's expert concurred (Horn Depo., 66:1-8 (admitting allegation 11(aa) of the amended complaint); 75:18-76:5 (noting his own measurement of the side grab bar as 48 inches from the rear wall and the rear bar as 39.5 inches but giving no testimony as to whether the rear bar was 39.5 inches as measured from the centerline of the toilet)). Because Defendant does not offer affirmative evidence to the contrary (*see* DUMF Nos. 42 (disputing Plaintiff's measurement of rear grab bar but offering as evidence only Mr. Horn's deposition testimony that does not contradict Plaintiff's expert's measurements); 43 (conceding measurement of side grab bar), there is no genuine dispute that Defendant violated the ADAAG on this issue.

//

//

**r. Clear Floor Space for Wheelchairs in Mechanic Shop**

Under ADAAG § 4.2.3, a clear space of 60 inches is required for a wheelchair to make a 180-degree turn. 28 C.F.R. pt. 36, App. A, § 4.2.3. Plaintiff's expert witness specifies that the clear floor space in the waiting area is approximately 42.5 inches wide. (Bluhm Decl., ¶ 34; Exh. 30.) Defendant disputes that there is no "public auto repair shop office/waiting area" at the facility. (Doc. 97-16, No. 44.) However, Defendant's contention regarding the characterization of the name of the mechanic shop area does not contradict Plaintiff's evidence that this area is generally accessible to the public and Plaintiff's expert's measurements demonstrating that this area violates the ADA. (*See* PRUMF, No. 44 (pointing to testimony by facility tenant Yadollah Missaghian that while the area is not generally used as a waiting room, it is open to the public and he would not require any member of the public to leave); Missaghian Depo., 54:5-56:23, 65:5-10.) Defendant also refers to Mr. Horn's report to contradict Plaintiff's expert's measurements; however, as discussed above, that report is not before the Court and cannot be relied upon to create a factual dispute. Because Defendant offers no affirmative evidence to the contrary, there is no genuine dispute that Defendant violated the ADAAG on this issue.[6]

**C. Plaintiff's Unruh Act Claims**

California's Unruh Civil Rights Act establishes protections for persons with disabilities that parallel those of the ADA. The statute provides that

> [a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b). The Unruh Act provides different remedies from those in the ADA. A plaintiff who prevails on an Unruh Act claim is entitled to injunctive relief, actual damages, and

---

6 The Court again notes that Defendant's general skepticism about Plaintiff's credibility and evidence is insufficient to create a genuine issue of material fact. *See, e.g., Feezor v. Patterson*, 896 F. Supp. 2d 895, 901 (E.D. Cal. 2012) *aff'd sub nom. Feezor v. HanesBrands Direct, LLC*, 596 F. App'x 558 (9th Cir. 2015) (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993) ("[M]ere argument does not establish a genuine issue of material fact to defeat summary judgment. A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials in pleadings, but 'must set forth specific facts showing that there is a genuine issue for trial.'") (quoting Fed. R. Civ. P. 56(e); (other citations omitted))).

minimum statutory damages of $4,000 for each occasion in which he was discriminated against. Cal. Civ. Code § 52(a); *Jankey v. Lee*, 55 Cal. 4th 1038, 1044 (Cal. 2012). The litigant does not need to prove actual damages to recover the independent statutory damages. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000). The Unruh Act also allows for attorney's fees. Cal. Civ. Code § 52(a).

A plaintiff can make out a valid Unruh Act claim by showing a violation of the ADA. *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 669 (Cal. 2009). Where an Unruh Act claim is premised on a violation of the ADA, the plaintiff need not demonstrate intentional discrimination to recover. *Id*. Plaintiff argues that his ADA claims also constitute valid claims under the Unruh Act. This court has found Plaintiff's ADA claims to be valid. As a result, Plaintiff also has valid Unruh Act claims and is entitled to statutory damages.

**D. Defendant is Jointly and Severally Liable for Damages under the ADA**

Defendant contends that regardless of the existence of any barriers at the facility, Plaintiff's failure to join Yadollah Massaghian, the tenant and operator of the facility, prevents this Court from providing Plaintiff with the relief he seeks. (Doc. 97, pp. 10-11.) Defendant contends that as the lessee, Mr. Massaghian is a necessary party to this action and "shares liability with Defendant and has equitable rights to the property that would prevent Defendant from being able to make any changes[.]" (Doc. 97, p. 10.) However, under the ADA, *it does not matter* that Plaintiff failed to join all possible defendants. As the undisputed owner of the property, Defendant is jointly and severally liable for the removal of all barriers on the property.

As unambiguously articulated by the Ninth Circuit:

> The ADA imposes compliance obligations on "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The existence of a lease that delegates control of parts of that property to a tenant has no effect on the landlord's preexisting obligation, because under the ADA, a party is prevented from doing anything "through contractual, licensing, or other arrangements" that it is prevented from doing "directly."

*Kohler v. Bed Bath & Beyond of California*, LLC, 780 F.3d 1260, 1264 (9th Cir. 2015) (quoting 42 U.S.C. § 12182(b)(1)(A)(i)). The ADA imposes concurrent obligations on landlords and tenants, and provides that a landlord, as an owner of the property, remains liable for ADA

compliance even on property leased to, and controlled by, a tenant. *Botosan v. Paul McNally Real.*, 216 F.3d 827, 832-34 (9th Cir. 2000).  A landlord cannot contract away its responsibility under the ADA.  *Kohler*, 780 F.3d at 1264.  Therefore, regardless of whether Defendant has a lease with tenant Mr. Massaghian, Plaintiff is entitled to obtain full relief from Defendant under the ADA.

## VI.    CONCLUSION

According, IT IS HEREBY ORDERED that:

1.    The Court GRANTS Plaintiff's motion for summary judgment as to violations of the ADA and GRANTS injunctive relief with respect to twenty-three architectural features;

2.    The Court GRANTS Plaintiff's motion for summary judgment as to claims under the Unruh Act based on the aforementioned ADA violations, and awards statutory damages of $ 4,000;

3.     The Clerk of Court is DIRECTED to enter judgment for Plaintiff; and

4.    This case shall be CLOSED.

IT IS SO ORDERED.

Dated:   **March 4, 2016**                          **/s/ Sheila K. Oberto**
                                              UNITED STATES MAGISTRATE JUDGE