# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | Case No. 1:14-cv-01178-SKO |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11(C)(2)** |
| v. | |
| | (Doc. 68) |
| CHASE, INC., d/b/a SLATER SHELL, | |
| Defendant. | |

## I.   INTRODUCTION

On July 6, 2015, Plaintiff Ronald Moore ("Plaintiff") filed an "ex parte application for protective order requiring Defendant to deliver Plaintiff's private medical records obtained against Plaintiff's objection" along with a declaration by Plaintiff's counsel Tanya Moore ("Moore"). (Doc. 42.) On July 17, 2015, the Court denied Plaintiff's ex parte application and ordered Plaintiff to review the documents in dispute and prepare a privilege log. (Doc. 47.) On October 20, 2015, Defendant Chase, Inc., d/b/a Slater Shell ("Defendant") filed a motion for sanctions pursuant to F. R. Civ. P. 11(C)(2), requesting sanctions be awarded against Plaintiff "for filing a frivolous motion." (Doc. 68.) On October 30, 2015, Plaintiff filed his opposition to Defendant's motion,

along with declarations of Moore and paralegal Marejka Sacks ("Sacks") and excerpts from several depositions taken in an unrelated case being litigated by counsel Moore and Kharazi, *Moore v. Millennium Acquisitions, LLC, et al.*, No. 1:14-CV-01402-LJO-SAB ("*Millennium*"). (Doc. 71.) Defendant filed its reply on November 10, 2015. (Doc. 73.) Having reviewed the parties' papers and all supporting material, the matter was found suitable for decision without oral argument pursuant to Local Rule 230(g), and the hearing was vacated.

For the following reasons, Defendant's motion for sanctions pursuant to Fed. R. Civ. P. 11(c)(2) is DENIED.

## II. BACKGROUND

### A. Factual Background[1]

On May 13, 2015, defense legal assistant Nunez-Gonzalez placed an email order with Melissa Norwood of First Legal Records Retrieval ("First Legal"), a third-party legal records production service, for service of a subpoena on Kaiser Permanente ("Kaiser"). (Doc. 45, ¶ 1.) Attached to the email was a draft subpoena issued by the U.S. District Court for the Eastern District of California and signed by defense counsel Kharazi, requesting "all" of Plaintiff's medical records from January 1, 2005, through the date of the subpoena. (Doc. 45-1, Exh. 1 ("Original Subpoena").) Nunez-Gonzalez requested that First Legal "serve the subpoena with all appropriate notices" and "notice opposing counsel of subpoena." (Doc. 45-1, Exh. 1.) However, when First Legal redrafted the Original Subpoena attached to the email dated May 13, 2015, it erroneously issued a subpoena from the U.S. District Court for the Northern District of California requesting a significantly broadened category of records from Kaiser without any date limitation. (Doc. 42-2, Exh. A ("Revised Subpoena").) The Revised Subpoena was therefore not only defective on its face, as it had been issued from the incorrect district court; it was also substantially broader than what Defendant had initially requested.

//

---

[1] The factual background is taken from the Court's July 7, 2015, order denying Plaintiff's ex parte application for a protective order. (*See* Doc. 47.) In preparing the factual background, the Court relied on the parties' exhibits at Docs. 42, 43, 44, 45, and 46, and has supplemented this background only as necessary based on additional information and facts presented in the parties' exhibits at Docs. 68, 71, and 73.

2

On May 27, 2015, Plaintiff's counsel Moore received a copy of the Revised Subpoena and contacted defense counsel Kharazi by email to demand he immediately withdraw the Revised Subpoena. (Doc. 42-2, Exh. B.) Moore threatened to "bring a motion to quash and for sanctions" if the subpoena was not withdrawn. (Doc. 42-2, Exh. B.) Nunez-Gonzalez contacted First Legal and requested that the Original Subpoena be "re-served" from the correct district. (Doc. 45-4, Exh. 4.) When Moore emailed Kharazi on June 1, 2015, asking for the status of the Revised Subpoena, she again threated to bring a motion to quash the subpoena. (Doc. 42-2, Exh. C.) Kharazi emailed Moore and responded that his office had sent her a new subpoena, and she could review it and contact him, if necessary. (Doc. 42-2, Exh. C.) Kharazi also informed Moore he would be in trial that week. (Doc. 42-2, Exh. C.) Moore responded that "if any records whatsoever are produced to you under the previous subpoena, we will move the Court for sanctions as well as custody of the records and any copies made." (Doc. 42-2, Exh. D.)

That same day, a reminder notice was sent from First Legal to Moore's offices, notifying Moore that a subpoena had been issued to Kaiser and offering Moore "an opportunity to obtain the same set of records that [First Legal] [would] deliver to subpoenaing counsel." (Doc. 44-1, Exh. 1.) The reminder notice included an instruction to "place an 'x'" beside any item that Moore's office wished to obtain a copy and to indicate the method of payment for those copies. (Doc. 44-1, Exh. 1.) Marejka Sacks ("Sacks"), a paralegal with the Moore Law Firm, checked an "x" beside the category "Kaiser Permanente" and beside "COD" (charge on delivery) as payment for those copies, and signed her name on the line authorizing a copy to be made and charged on delivery. (Doc. 44-1.) Sacks also wrote "we have objected to the subpoena on behalf our client Ronald Moore" in a blank space on the request. (Doc. 44-1, Exh. 1.) Isaac Medrano, another employee with the Moore Law Firm, faxed the signed notice to First Records Retrieval (First Legal) on June 5, 2015. (Doc. 44-1, Exh. 1.)

On June 15 and 16, 2015, unaware that Moore had requested a copy of the Kaiser records on June 5, 2015, Nunez-Gonzalez contacted First Legal via email requesting a copy of the corrected Notice of Issuance of Subpoena "such as the one [she had] attached in prior email[s]." (Doc. 45-6, Exh. 6.) On June 16, 2015, First Legal responded that the "corrected subpoena" had

3

only been served on Kaiser; it had not been re-noticed to opposing counsel.  (Doc. 45-7, Exh. 7.)  It is not clear whether this "corrected subpoena" was the Original Subpoena sent by Kharazi's office or the Revised Subpoena from First Legal.  On June 17, 2015, Nunez-Gonzalez requested the "entire order" for Plaintiff's Kaiser records be put "on hold."  (Doc. 45-8, Exh. 8.)

On June 25, 2015, copies of the requested Kaiser records were delivered by FedEx to defense counsel.  (Doc. 44, ¶ 6; 46, ¶ 2.)  Apparently, no one at Kharazi's office noticed or opened the delivery when it was made, and on June 26, 2015, Nunez-Gonzalez emailed First Legal to request that the hold be removed from the order, "[t]he attached subpoena be re-served on Kaiser Permanente . . . . with all appropriate notices," and opposing counsel be served with the new subpoena.  (Doc. 45-9, Exh. 9.)  The Original Subpoena was attached to the email for re-service, still bearing Kharazi's signature and dated May 12, 2015.  (Doc. 45-9, Exh. 9.)

That same day, Moore received a copy of Plaintiff's Kaiser medical records pursuant to her June 5, 2015, faxed request to First Legal.  (Doc. 42-2.)  Moore emailed Kharazi objecting that no second subpoena had been served on her office and demanded he "immediately have all records delivered" to her office, make no copies of the records, and allow no one to view the records.  (Doc. 42-2.)  Moore also demanded Kharazi provide an affidavit attesting that these things had been done, or she would motion the Court "ex parte . . . for a protective order and for sanctions for [his] gross misrepresentations and failure to withdraw the subpoena as promised."  (Doc. 42-2.)  Kharazi and Moore thereafter exchanged several emails until defense paralegal Cristobal located the FedEx box containing Plaintiff's Kaiser records, sealed and unopened, on June 30, 2015.  (Docs. 42-2, Exhs. F, G, H; 46, ¶ 3.)  Cristobal emailed Moore to inform her that the records had been located and remained sealed and unopened, and would be moved to Kharazi's office unopened.  (Doc. 46-1, Exh. 1.)  Moore emailed Kharazi and informed him that if he did not deliver Plaintiff's Kaiser records to her immediately, she would move ex parte for a protective order.  (Doc. 42-2, Exh. I.)

On July 2, 2015, Kharazi emailed Moore and "declare[d] under penalty of perjury" that the box of Plaintiff's Kaiser medical records remained sequestered in his office, sealed and unopened, pending resolution of their dispute.  (Doc. 42-2, Exh. J.)  Kharazi proposed a compromise

4

whereby he would continue to sequester the records, sealed and unopened, while Moore reviewed her copy of the records and created a privilege log of which specific documents within the records she contended were privileged. (Doc. 42-2, Exh. J.) If Kharazi agreed with Moore's privilege log, he would "ask First Legal to retrieve the sealed box and remove those pages from the box." (Doc. 42-2, Exh. J.) If Kharazi disagreed with Moore's privilege log, he "would ask Judge Oberto to review the documents in camera and [inform the defense] whether [it is] entitled to th[os]e documents." (Doc. 42-2, Exh. J.) Moore rejected this compromise by email that same morning, stating that Kharazi's conduct was "deplorable" and "sanctionable," and informing him that she would proceed by motion to secure the delivery of his copy of Plaintiff's Kaiser medical records to her office. (Doc. 42-2, Exh. K.)

**B.      Procedural Background**

On July 6, 2015, Plaintiff filed an "ex parte application for protective order requiring Defendant to deliver Plaintiff's private medical records obtained against Plaintiff's objection." (Doc. 42.) At no time prior to filing this "application" did Plaintiff file a motion to quash the subpoena, file a motion or stipulation for a protective order, request an informal discovery dispute conference pursuant to Magistrate Judge Oberto's informal discovery dispute resolution practice, or file any other motion pursuant to Local Rule 251. (*See generally,* Docket.) The Court denied Plaintiff's ex parte application on several grounds: it was procedurally defective, failed to demonstrate ex parte relief was warranted, and failed to demonstrate good cause that the requested relief should be granted. (Doc. 47, pp. 9-10.)

Although the Court determined Plaintiff's failure to file a motion to quash the subpoena precluded Plaintiff from seeking to retroactively invalidate the subpoena, the Court ordered that defense counsel's proffered compromise be used "to ensure that only medical records relevant to the current case are produced." (Doc. 47, pp. 10-11.) "Under defense counsel's proposal, Plaintiff would review his copy of the records and identify the Bate stamp numbers and 'the general contents of the documents to which [Plaintiff] object[s].'" (Doc. 47, p. 10 (alteration in original).)

//

//

**C.     Motion for Sanctions**

Defendant filed a motion for sanctions against Plaintiff "for filing a frivolous motion in violation of Federal Rule of Civil Procedure 11(b)." (Doc. 68, p. 1.) "Defendant opposed Plaintiff's motion and provided notice to Plaintiff that the motion was frivolous[,] but the motion was never withdrawn." (Doc. 68, p. 1.) Because the Court denied Plaintiff's motion, Defendant asserts it is entitled to sanctions pursuant to F. R. Civ. P. 11(C)(2). (Doc. 68.) Plaintiff opposed Defendant's motion for sanction, contending Defendant is prohibited from seeking sanctions under F. R. Civ. P. 11 for a discovery motion, and regardless, Plaintiff's ex parte application was made in good faith. (Doc. 71.) Defendant responded that Plaintiff's original application did not "f[a]ll within the ambit of the exemptions provided by Rule 11" and that sanctions should be awarded against Plaintiff. (Doc. 73.)

## III.     LEGAL STANDARD

Fed. R. Civ. P. 11 "imposes on any party who signs a pleading, motion, or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Comm'ns. Enterprises, Inc.*, 498 U.S. 533, 551 (1991). The Ninth Circuit has explained that

> . . . [s]anctions should be imposed if (1) "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is [or other paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law" or if (2) "a pleading [or other paper] has been interposed for any improper purpose."

*Golden Eagle Dist. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986); *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). A pleading is frivolous if it is baseless and made without a reasonable and competent inquiry. *Id.* The subjective intent of the pleader or movant to file a meritorious document is irrelevant; the standard is one of "reasonableness." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986) (abrogated on other grounds). "If, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time that the position is adopted, then sanctions should not be imposed." *Golden Eagle*, 801 F.2d at 1538; *Zaldivar*, 780 F.2d at 832. Rule 11 sanctions may be

imposed even when only a portion, not the entirety, of a pleading is frivolous. *Altmann v. Homestead Mortg. Income Fund*, 887 F. Supp. 2d 939, 955 (E.D. Cal. 2012) (citing *Townsend*, 929 F.2d at 1364-65).

## IV. DISCUSSION

### A. Sanctions Pursuant to Rule 11

#### 1. Plaintiff's Ex Parte Application Was Not a Discovery Motion Exempt from Sanctions Pursuant to Fed. R. Civ. P. 11(d)

As a preliminary matter, Plaintiff contends that his ex parte application for a protective order was a discovery motion filed pursuant to Fed. R. Civ. P. 26(c), and therefore cannot be sanctioned pursuant to Fed. R. Civ. P. 11. (Doc. 71, p. 7.) Rule 11 sanctions are only available with regard to papers filed with the court, and do not apply to allegations of general attorney misconduct, or to alleged misconduct in the discovery process. *See* Fed. R. Civ. P. 11(d) (rule does not apply to disclosures and discovery requests, responses, objections, and motions under Fed. R. Civ. P. 26 through 37). Defendant responds that Plaintiff's ex parte application was not a discovery motion under Fed. R. Civ. P. 26 through 37. (Doc. 73.)

Defendant originally issued subpoenas duces tecum to a third-party, Kaiser, pursuant to Fed. R. Civ. P. 45. (*See* Original Subpoena; Revised Subpoena.) As the Court explained in its July 7, 2015, order, under Rule 45 "[a] party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or file a motion to quash" pursuant to Fed. R. Civ. P. 45(c)(3)(A). (Doc. 47, p. 8 (citing *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005)).) Though the Revised Subpoena was procedurally defective and overly broad, as discussed *supra*, Plaintiff was served with a copy of the Revised Subpoena, requested a copy of all documents produced in compliance with the Revised Subpoena, "objected to the subpoena" by stating his objection on his order for a copy of the documents, and received a copy of all those documents.

Plaintiff's sole recourse was to seek a protective order or file a motion to quash *prior* to the date of production; as discussed in the Court's July 7, 2015, order, Plaintiff indisputably did neither. (Doc. 47, pp. 9-10.) Instead, Plaintiff filed what the Court described as a "hybrid" ex

7

parte application attempting to "retroactively invalidat[e] the subpoena." (Doc. 47, p. 10.)

Contrary to Plaintiff's argument that he is exempt from Rule 11 sanctions because his ex parte application for a protective order was a "discovery motion" pursuant to Rule 26(c) (Doc. 71, p. 7), the "hybrid" ex parte application seeking to compel Defendant to return documents already produced by a third-party was not a "discovery motion" pursuant to Fed. R. Civ. P. 26. Rather, Plaintiff's ex parte application was an "eleventh hour motion" intended to retroactively undo the production of documents that Plaintiff failed to prevent in the first place with a motion for protective order or motion to quash the subpoena. (Doc. 47, pp. 9-10.) Moreover, the relief Plaintiff should have sought pursuant to Rule 45 – a protective order or order quashing the subpoena – *also are not* "discovery motions" within the ambit of Fed. R. Civ. P. 26, and therefore not exempt from Rule 11 sanctions. Fed. R. Civ. P. 11(d).

Accordingly, Plaintiff's ex parte application, if "frivolous," falls within the ambit of sanctions authorized by Fed. R. Civ. P. 11(b).

### 2. Plaintiff's Counsel Moore's[2] Filing of the Ex Parte Application was "Frivolous" within the Meaning of Rule 11

Defendant requests sanctions against Plaintiff for filing a "frivolous" "ex parte application for protective order requiring Defendant to deliver Plaintiff's private medical records obtained against Plaintiff's objection." (Docs. 68; 73.) Defendant asserts that Plaintiff's ex parte application "was unquestionably baseless and was made without a reasonable and competent inquiry." (Doc. 68, p. 5.) Plaintiff knew Defendant was in possession of his medical records. Plaintiff's counsel, however, refused to "agree to submit a privilege log related to Plaintiff's medical records to the [C]ourt" and "refused to identify which documents were privileged or even review the documents" prior to filing the ex parte application demanding the documents be turned over – even after Defendant made clear that the documents at issue had been sequestered in accordance with Fed. R. Civ. P. 42(e)(2)(B) and repeatedly informed Plaintiff that his application was "baseless." (Doc. 68, p. 5.) Because Plaintiff's records were safely sequestered and the Court

---

[2] Defendant requests the Court impose sanctions against both Plaintiff and Plaintiff's counsel. (Doc. 68, p. 7.) However, pursuant to Fed. R. Civ. P. 11(c)(5)(A), sanctions may not be imposed against a represented party for violating Rule 11; sanctions may only be imposed against the attorney who prepared and filed the frivolous pleading.

8

ultimately ordered Plaintiff to create such a privilege log, Defendant contends that Plaintiff lacked any "legal basis" for filing his ex parte application demanding the documents be turned over and requests the Court award Defendant its attorney's fees incurred in opposing Plaintiff's ex parte application. (Doc. 68, p. 5.) Defendant argues that its fees are recoverable under both Rule 11 and pursuant to the Court's inherent authority to sanction. (Doc. 68; p. 6.)

Because Plaintiff believed his ex parte application to be a "discovery motion" and outside the ambit of Rule 11 sanctions, he focused his opposition on addressing whether his ex parte application was made in good faith. (Doc. 71, pp. 7-17.) Plaintiff asserts that "[w]hile the Court found that the request for relief was improperly requested ex parte, and that plaintiff failed to timely address his concerns via a motion to quash the subject subpoena, it also acknowledged that Plaintiff's concerns regarding the breadth of the documents produced and Plaintiff's privacy interests were undisputed." (Doc. 71, p. 5.) Plaintiff also devotes several pages to describing the rocky and apparently unprofessional interactions between Plaintiff's counsel Moore and defense counsel Kharazi, who are also opposing counsel in an unrelated case pending before this Court[3]. (Doc. 71, pp. 5-6; *see also Millenium*.) Moore explains that she offers this background to "explain[ ] the distrust Plaintiff's counsel has for Defendant's counsel, and why she felt [filing] the ex parte application was necessary" to ensure the safe return[4] of Plaintiff's private medical records." (Doc. 71, pp. 6-7.) Plaintiff contends that "the application was filed to protect

---

[3] The Court will not summarize or address the allegations of defense counsel Kharazi's statements and behavior, or recapitulate any statements made "on the record" during depositions in the unrelated *Millenium* matter. These statements and alleged behavior are not relevant to the Rule 11 frivolity analysis as set forth in the Legal Standards section, as discussed below.

[4] Plaintiff repeatedly employs the term "return" when describing her communications with Defendant: "Plaintiff's counsel again demanded that the records be returned, unopened and unviewed" and "[r]ather than return the documents," defense counsel asked Plaintiff to create a privilege log. (Doc. 71, p. 8.) As discussed in the Court's July 7, 2015, order, the ex parte application was not a request for Defendant to *return* documents; it was an attempt to unwind the production of documents by a third-party pursuant to a subpoena duces tecum. (*See, supra*.)

Regardless of whether the Revised Subpoena may have been procedurally defective or overbroad, Plaintiff neither sought to quash the subpoena, nor sought a protective order. The documents were produced by a third-party, and when Plaintiff received a copy of the subpoena, "Plaintiff's counsel requested that First Legal provide her any documents produced under the subpoena" (Doc. 71, p. 8) while noting "her objection to the subpoena" with a written statement by her paralegal that Plaintiff's counsel "objected to the subpoena on behalf of [Plaintiff]" (Doc. 47, p. 10, n.3). This written "objection" while simultaneously ordering a copy of the records did not amount to a motion to quash the subpoena pursuant to Rule 45. Therefore, it is unclear why Plaintiff characterizes his ex parte application as a "discovery motion" seeking the "return" of documents improperly or impermissibly produced to Defendant.

9

Plaintiff's privacy" because his counsel did not trust defense counsel to ensure his privacy was upheld, and "whether successful or not, [the ex parte application] was in no way filed in bad faith nor was [it] frivolous." (Doc. 71, p. 11.)

Under Rule 11, by signing a document, an attorney certifies that (1) she has read the pleadings or motions she filed and (2) the pleading or motion is "well-grounded in fact," has a colorable basis in law, and is not filed for an improper purpose. Fed. R. Civ. P. 11; *accord Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (partially superseded, on other grounds, by 1993 Rule 11 amendment); *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994). The Rule requires that the lawyer undertake "an inquiry reasonable under the circumstances" to determine whether her legal contentions are "warranted by existing law" and her factual claims either "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation." Fed. R. Civ. P. 11(b). Because the Court uses an objective standard of reasonable inquiry when considering apparent Rule 11 violations, which does not require a finding of subjective bad faith, Plaintiff's counsel Moore's alleged reasons for distrusting defense counsel are therefore irrelevant to the Rule 11 analysis. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991); *Zaldivar*, 780 F.2d at 829-31 (Rule 11 is violated "if the paper filed is frivolous, legally unreasonable or without factual foundation, even though not filed in subjective bad faith"), *overruled on other grounds by Cooter & Gell*, 496 U.S. at 399. The inquiry before the Court is thus limited in scope to whether Plaintiff's ex parte application was *objectively* "frivolous" or "brought for an improper purpose." *Townsend*, 929 F.2d at 1362.

Defendant contends that Plaintiff's ex parte application was objectively baseless and made without reasonable inquiry because Plaintiff was ultimately ordered to produce a privilege log in accordance with defense counsel's original suggested compromise. (Doc. 68, p. 5.) Plaintiff contends, however, that the Court found he had a valid and undisputed privacy interest in his medical records, and therefore his application "borne out [of] Plaintiff's counsel's efforts to protect [his] private medical information" was necessarily proper. (Doc. 71, p. 10.)

Both parties appear to misapprehend the Court's July 7, 2015, order. That the Court was sympathetic to Plaintiff's valid privacy interest in his complete medical records does not mean that

the filing of the "ex parte application" itself was objectively reasonable. And the Court's ruling that the dispute as to Plaintiff's articulated privacy interest in his complete medical records would be addressed by the creation of a privilege log *was not* a ruling on the merits of Plaintiff's ex parte application. Rather, the Court determined that Plaintiff's "ex parte application for protective order requiring Defendant to deliver Plaintiff's private medical records obtained against Plaintiff's objection" was procedurally defective and substantively failed to meet the test for ex parte relief. (Doc. 47, pp. 8-10 (holding that Plaintiff's ex parte application failed to demonstrate ex parte relief was warranted and failed to demonstrate good cause that the requested relief should be granted).)

The Court explained that Plaintiff's ex parte application sought impossible relief as it in effect sought to retroactively invalidate the subpoena. (Doc. 47, p. 10.) Because Plaintiff's counsel missed the opportunity to prevent defense counsel from obtaining Plaintiff's complete medical record – even if she relied on defense counsel's representations in doing so[5] – the legal basis for filing an ex parte application seeking to retroactively undo the production of documents to Defendant is unclear.

As noted above, Rule 11 requires lawyers to undertake "an inquiry reasonable under the circumstances" to determine whether her legal contentions are "warranted by existing law" and that factual claims either "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation." Fed. R. Civ. P. 11(b). Plaintiff's counsel is an experienced attorney, and can reasonably be expected to determine how to properly object to a subpoena duces tecum served on a third-party. *Zaldivar*, 780 F.2d at 830 (an

---

[5] As discussed in the Court's Order on Plaintiff's ex parte application:

> It is undisputed that Plaintiff's counsel failed to file a motion to quash the Revised Subpoena which was issued from the Northern District and requested a broad range of records from Kaiser despite Plaintiff's counsel's threats to do so on more than one occasion. Plaintiff's counsel alleges that she only decided not to file a motion to quash the subpoena based on defense counsel's representation that the subpoena had been withdrawn (see Doc. 42-1); however, the fact remains that no motion to quash was filed.
>
> [ . . . ]
>
> Plaintiff's failure to file a proper motion to quash – regardless of whether plaintiff's counsel was relying on defense counsel's representation that the subpoena was being re-noticed – is fatal to his request for ex parte relief retroactively invalidating the subpoena.

(Doc. 47, pp. 9-10.)

attorney's objective reasonableness in filing a motion is measured against the "reasonable man," meaning in this context "a competent attorney admitted to practice before the district court"). A "simple reading" of Rule 45 should have addressed Plaintiff's counsel's concerns about the propriety and scope of the subpoena, *Townsend*, 929 F.2d at 1367, and informed Plaintiff's counsel that a subpoena duces tecum can only be quashed by a motion, *not* by writing "we object" on counsel's order of a copy of records and filing an "ex parte application" seeking to have produced documents turned over to the objecting party, *see* Fed. R. Civ. P. 45.

In sum, "plaintiff's counsel could not have made the 'reasonable inquiry [of whether her motion] [wa]s warranted by existing law . . .' 'since there is no semblance of existing law which would have justified the motion.'" *Townsend*, 929 F.2d at 1367. Because Plaintiff's counsel failed to make the required "reasonable inquiry" to determine whether the "ex parte application for protective order requiring Defendant to deliver Plaintiff's private medical records obtained against Plaintiff's objection" was "warranted by existing law," Fed. R. Civ. P. 11(b), Rule 11 sanctions against Plaintiff's counsel Moore are appropriate pursuant to Fed. R. Civ. P. 11(c) ("If . . . the court determines that subdivision (b) has been violated, the court may . . . impose an appropriate sanction. . . .").

### 3. Defendant's Failure to Comply with the Mandatory Procedural Requirements Militate Against Imposing Rule 11 Sanctions

Sanctions imposed under Rule 11 shall be limited to what is sufficient to deter "repetition of such conduct or comparable conduct by others similarly situated[,]" and may include an award for "reasonable attorney's fees and other expenses incurred as a direct result of the violation." Fed. R. Civ. P. 11(c)(2). However, "Rule 11(c)(1)(A) provides strict procedural requirements for parties to follow when they move for sanctions under Rule 11." *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 788 (9th Cir. 2001). Rule 11(c)(1)(A) provides that:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

The purpose of Rule 11(c)(1)(A)'s safe harbor is to give the offending party the opportunity to withdraw the offending pleading and thereby escape sanctions. *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998). The procedural requirements of Rule 11(c)(1)(A)'s safe harbor are mandatory. *Radcliffe*, 254 F.3d at 789; *Barber*, 146 F.3d at 710-11. Informal warnings threatening to seek Rule 11 sanctions do not satisfy the strict requirement that a motion be served on the opposing party twenty-one days prior to filing. *Barber*, 146 F.3d at 710. That a party has advanced warning that another party finds allegations objectionable does not cure a failure to comply with the strict procedural requirement of Rule 11(c)(1)(A). *Radcliffe*, 254 F.3d at 789. Additionally, a request for Rule 11 sanctions must be made "separately from other motions or requests and [must] describe the specific conduct alleged to violate [Rule 11(b)]." Fed. R. Civ. Pro. 11(c)(1)(A); *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999). Thus, the failure to comply with the mandatory procedural requirements makes Rule 11 sanctions inappropriate.

Here, Plaintiff's counsel Moore received a copy of Plaintiff's medical records pursuant to her faxed request on June 26, 2015. After several emails between counsel, on July 2, 2015, defense counsel Kharazi confirmed he had a copy of those same records and represented "under penalty of perjury" to Moore that the box of Plaintiff's medical records remained sequestered in his office, sealed and unopened, pending resolution of their dispute. (Doc. 42-2, Exh. J.) Moore nonetheless informed Kharazi that she would be proceeding "by motion" to compel Defendant to turn over the documents to her, despite that there was no immediate danger of either destruction or publication of Plaintiff's medical records, per defense counsel's representation. (Doc. 42-2, Exh. K.) On July 6, 2015, Plaintiff's counsel filed the ex parte application and included a request for sanctions; on July 8, 2015, Defendant filed an opposition to the application "which put Plaintiff on notice of the frivolousness of the motion." (Doc. 68, p. 8.) However, as discussed above, notice that Defendant opposed Plaintiff's ex parte application *is not* notice pursuant to Rule 11. *Radcliffe*, 254 F.3d at 789; Fed. R. Civ. P. 11 Advisory Committee Notes, 1993 Amendment. Plaintiff "was not given the opportunity to respond to [Defendant]'s motion by withdrawing his claim, thereby protecting himself totally from sanctions pursuant to that motion. The purpose of the 21-day safe-harbor amendment was entirely defeated. An award of sanctions cannot be upheld

under those circumstances." *Barber*, 146 F.3d at 710.

**B.      Sanctions Pursuant to the Court's Inherent Power**

In the body of its application, Defendant also requested the Court impose sanctions pursuant to its inherent power to sanction. (Doc. 68, p. 6.) Defendant requests Plaintiff's counsel be sanctioned in the amount of $1,623.75, comprising $1,383.75 in attorney's fees Defendant incurred in opposing Plaintiff's ex parte application and $240.00 in attorney's fees Defendant incurred in preparing the motion for sanctions. (Doc. 68, p. 9; *see also* Doc. 75 (defense counsel's affidavit describing his hourly rates and detailing his time spent on both pleadings).)

The Court has the inherent power and authority to impose sanctions, though this power must be exercised with "restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). A court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (internal quotations and citations omitted). "The imposition of sanctions . . . transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'" *Id.* at 46.

Mere negligence or inadvertent conduct is insufficient to impose sanctions; bad faith or conduct "tantamount" to bad faith is necessary. *See Chambers*, 501 U.S. 32; *Fink*, 239 F.3d at 993. "[A] finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quoting *In re Keegan Mgmt. Co.*, 78 F.3d 431, 436 (9th Cir. 1996)). "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 994. In this Circuit, sanctions are "reserved for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation." *Primus Auto. Fin. Servs. V. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (quoting *Operating Engr's Pension Trust v. A-C Co.*, 859 F.2d 1336,

1344 (9th Cir. 1988)).

As discussed, *supra*, Plaintiff's filing was frivolous and "not warranted by existing law." However, the Court is not convinced that Plaintiff's counsel's conduct was "substantially motivated by vindictiveness, obduracy, or mala fides[.]" *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (internal quotations and citation omitted).

Plaintiff's counsel's failure to make the required "reasonably inquiry" to determine whether Plaintiff's "ex parte application for protective order requiring Defendant to deliver Plaintiff's private medical records obtained against Plaintiff's objection" was "warranted by existing law" under Fed. R. Civ. P. 11(b) is not tantamount to *bad faith* or made for an *improper purpose*, as Plaintiff's counsel was motivated by her concern for her client's privacy interest in his complete Kaiser medical and billing records.  (*See* Doc. 47, pp. 10-11 (recognizing Plaintiff's privacy interest in his Kaiser records and ordering those records to remain sequestered and unopened pending the creation of a privilege log).)  Even if, as discussed above, the ex parte application was not substantially justified and sought a remedy the Court could not retroactively provide, the Court is unable to conclude that Plaintiff's counsel's conduct was sanctionable under this standard.

As such, Defendant's alternative motion for sanctions pursuant to the Court's inherent authority is also DENIED.

### V.  CONCLUSION AND ORDER

Accordingly, IT IS ORDERED that Defendant's motion for sanctions pursuant to either Fed. R. Civ. P. 11 or the Court's inherent authority to impose sanctions is DENIED.

IT IS SO ORDERED.

Dated:   **March 10, 2016**                              **/s/ Sheila K. Oberto**
                                                         UNITED STATES MAGISTRATE JUDGE